# EXHIBIT 1

3/17/2023 5:00 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73781491
By: Joshua Hall
Filed: 3/17/2023 5:00 PM

CAUSE NO. _____

| | | |
|---|---|---|
| TOMEU VADELL, | § | IN THE DISTRICT COURT OF |
| DENNYSSE VADELL, and | § | |
| CRISTINA VADELL, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CITGO PETROLEUM CORPORATION | § | |
| | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Tomeu Vadell, Dennysse Vadell, and Cristina Vadell (collectively, the "Vadell Family") file this Original Petition against Defendant CITGO Petroleum Corporation ("CITGO" or "CITGO Petroleum"), showing the Court as follows:

## I.    INTRODUCTION

### *"To forgive and accept injustice is cowardice." ~ Mahatma Ghandi*

1.    Nothing is more devastating to a civilized society than when powerful people see fit to take advantage of hardworking, ordinary people with no regard for basic human rights. Yet this is precisely what CITGO did to Tomeu Vadell and his family. More than five years ago, what started as a normal business trip turned into an international nightmare. Tomeu became a pawn in CITGO's and the Venezuelan Government's dangerous game of deception.

2.    In 2017, tensions between the U.S. and Venezuela were rising, causing the United States to impose significant monetary sanctions against Venezuela. The Venezuela Government, under the control of Nicolas Maduro, sought to retaliate. It used its most valuable asset, the U.S.-based refiner CITGO, to exert geopolitical influence and control—and in an attempt to bypass the

newly-enacted sanctions. CITGO was clearly operating at the whim of the Venezuelan Government. And this time, the whim came with a devastating price to Tomeu and his family.

3.      On November 18, 2017, Tomeu Vadell left home on what he thought was a business trip. He was slightly annoyed by the timing of the trip because he had been planning on and was looking forward to spending the Thanksgiving holidays with his family. It was an American tradition his family had whole-heartedly embraced. However, at the last minute, CITGO made a somewhat unusual request that he attend meetings in Venezuela. Tomeu dutifully rearranged his holiday plans and packed his bags to catch the company flight. Before he left, he kissed his wife goodbye, something he might not have even remembered doing except it was the last time he was able to hold his family before he was brutally and wrongfully imprisoned for five excruciating years. Indeed, the next time he was able to hug his wife and children, the family had grown by one, welcoming Tomeu's first grandchild while he was rotting in a Venezuelan prison, and he had visibly shrunk from the near starvation he suffered while in captivity.

4.      Even before Tomeu arrived in Venezuela, he felt uneasy about the last-minute request to attend meetings in Venezuela. Something was off. CITGO had not provided him with a clear explanation for why they wanted him to go and Tomeu had not traveled to Venezuela for CITGO in many years. Frankly, his job had very little connection, if any, to operations in Venezuela.

5.      Once Tomeu arrived in Venezuela, the executives went straight to PDVSA's office. Tomeu and one other executive were told they could leave and go to the hotel. The next day, Tomeu attended various meetings, but the information being discussed was not relevant to his job and would not help him do his job or further CITGO's affairs. He was never asked to present anything or given any opportunity to participate in the discussions. It was also odd that the Vice

President of Legal Affairs, Edoardo Orsoni—who had flown to Venezuela with the other CITGO executives on November 19—abruptly and without telling anyone, quietly left Venezuela on November 20, 2017. Not only was this the first of the meetings they were all supposed to attend, but it was also the day *before* Tomeu and the other were unlawfully arrested and detained.

6.      On November 21, 2017, Tomeu's life was forever altered. The CITGO executives were scheduled and eager to return home that day so they could spend part of the holidays with their families. But instead, masked and armed security agents stormed the meetings and in a public display arrested—without a warrant—the executives that CITGO had hand selected for the trip. These six CITGO executives later became known as the "CITGO-6." The farcical excuse for the arrest involved a refinancing deal. But once again, this was far afield from Tomeu's job responsibilities. Tellingly though, Calixto Ortega, CITGO's *Vice President of Finance*, who also traveled with the men and was with them at the moment of the arrest, was not arrested.

7.      Tomeu and his family then endured a grueling process of Tomeu being falsely accused of a crime and detained in abhorrent conditions. All of his basic rights were violated. He was tortured physically and mentally. He was denied access to basic needs such as food, clothing, and health care. His freedom of movement and speech were restricted. And he was never afforded due process. He and his family were forced to participate in a sham judicial system that resulted in him summarily being convicted of a crime it was not even possible for him to have committed. The United Nations Working Group on Arbitrary Detentions in fact reported on the Venezuelan Government's deplorable mistreatment of Tomeu, and also on his provable innocence. Despite his obvious innocence, Tomeu nevertheless spent **1,775 days** in captivity, suffering untold horrors, including torture.

8.      Tomeu will admit that the worst part of his wrongful detention was not the fear that at any moment he could be killed or the mental and physical abuse he repeatedly endured. It was the fear that he might not ever see his family again. The idea that they were suffering was almost more than he could bear. He could withstand the injuries imposed on him, but knowing that his family was scared, distraught, and needed him is what made every day of his 1,775 days in captivity a living hell. However, it was also his faith in God and the love of his family that kept him alive and fighting for his freedom.

9.      Adding insult to injury, CITGO then abandoned both Tomeu and his family. CITGO refused to speak publicly regarding the men, making it appear that they were guilty, when CITGO knew that they were not. CITGO also refused to respond to multiple pleas from Tomeu's family to assist Tomeu in his fight for freedom, including their requests that CITGO pay his defense fees as contractually required. CITGO then unilaterally and abruptly stopped paying Tomeu's salary, impacting his wife's ability to support herself and Tomeu during this terrible crisis.

10.      Despite Tomeu's more than twenty years of dedicated service to CITGO, his trip to Venezuela was nothing more than a ruse. It was not a coincidence that the CITGO-6 were chosen to make the trip. Almost all of them are dual citizens of the United States and Venezuela, including Tomeu. Indeed, it was by design. CITGO specifically lured Tomeu and the other CITGO executives of Venezuelan-descent to Venezuela as part of a coordinated scheme to maximize their use as political pawns. Thus, with absolute callous disregard for his rights and safety, CITGO sent Tomeu to Venezuela under false pretenses. His freedom was taken and he and his family were sacrificed in an attempt to curry favor with the Maduro Regime.

11.     Tomeu and his family have paid an enormous price for CITGO's willingness to discard its loyal employee so cavalierly.

12.     As a result of CITGO's malfeasance, Tomeu lost five years of his life. Not only was he deprived of his freedom, but he was also physically and psychologically tortured. His most basic human rights were routinely violated. He lived in constant fear for his life, and he missed five years' worth of birthdays, anniversaries, graduations, holidays, and other celebrations with his family. He even missed the birth of his first grandchild. All of this he endured while knowing that he was completely innocent of the bogus criminal charges brought against him.

13.     Tomeu was not the only victim of his wrongful detention and mistreatment. The members of the Vadell Family have suffered greatly as the result of CITGO's actions. Tomeu's illegal detention in Venezuela devastated his wife Dennysse, and her circumstances were made even worse by the lack of support from CITGO. During the five years Tomeu was wrongfully imprisoned, his children were never able to visit him. Dennysse risked her own life and freedom to see him three times but had to stop because it became too dangerous for her to keep returning.

14.     Similarly, Tomeu's children were deprived of five years with their father with whom they are all extremely close. Each has been significantly affected by their father's absence. This tragedy has taken a terrible toll on their health, their relationships, and their jobs. Instead of pursuing their future and enjoying life, Tomeu's children were continuously and tirelessly advocating for their dad's freedom—all while CITGO sat on the sidelines, merely observing the terrible consequences of its decision to sacrifice and abandon its loyal employee.

## II.     CLAIMS FOR RELIEF

15.     The Vadell Family seeks monetary relief over $10,000,000.

### III.    PARTIES

16.    Tomeu Vadell ("Tomeu") is a United States Citizen, and his permanent residence is located in Lake Charles, Louisiana.

17.    Dennysse Vadell ("Dennysse") is a United States Citizen, and her permanent residence is located in Lake Charles, Louisiana.

18.    Cristina Vadell ("Cristina") is a United States Citizen, and her permanent residence is located in Houston, Texas.

19.    Defendant CITGO Petroleum Corporation is a Delaware corporation with its principal place of business at 1293 Eldridge Parkway, Houston, Texas 77077. It may be served by serving its registered agent for service of process—CT Corporation System, 350 N. St. Paul Street, Dallas, TX 75201. *Service is requested at this time by certified mail.*

### IV.    JURISDICTION AND VENUE

20.    The Court has jurisdiction over this controversy because the damages exceed the minimum jurisdictional limits of the Court. Venue is proper in Harris County because Defendant resides in Harris County, Texas.

### V.    STATEMENT OF FACTS

21.    All facts and allegations are based on information and belief.

22.    Tomeu was born in Caracas, Venezuela, to a humble Spanish immigrant family in 1959. He was the first in his family to graduate school. He obtained a Bachelor of Science in Mechanical Engineering from Universidad Metropolitana in Caracas in 1982 and then began working for PDVSA (Petróleos de Venezuela), Venezuela's state-owned oil company. At PDVSA, Tomeu held various positions related to engineering and capital projects in different refineries.

PDVSA also provided Tomeu with a scholarship to the Rensselaer Polytechnic Institute in Troy, New York, to obtain a Master of Science Industrial and Management Engineering in 1993.

23.    Tomeu is proud to be both a Venezuelan and a United States citizen. In 1999, Tomeu was offered a chance to work for the CITGO refinery in Lake Charles, Louisiana. He and his family were excited and nervous about the opportunity. As the family does with everything, they eagerly made America their home, embracing the ideals and values that make this country great. The Vadells saw the move as a chance to bring the best of both countries together.

24.    In his more than twenty years with CITGO, he worked his way up from Project Manager to Vice President of Refining. He was, without question, an exemplary employee for the company throughout his decades of service. He took pride in his loyalty to the company and his fellow employees.

25.    In January 2007, Tomeu completed the naturalization process and became a United States citizen.

26.    Tomeu is and has always been devoted to his family. Tomeu married Dennysse in 1986 and together they raised three children: Veronica, Cristina, and Diego. The Vadell Family is an extremely close-knit and loving family, especially as a family who immigrated to the United States without any friends or family nearby. Tomeu is the rock for his family, someone that each could turn to and depend on in any situation, good or bad. In fact, even while he was wrongfully imprisoned, tortured, and deprived of his basic human rights, Tomeu always put his family first and exhibited profound strength and courage to help his family cope with this five-year nightmare.

A.    **Venezuela's Ownership and Control of CITGO in 2017.**

27.    PDVSA is owned directly by the nation of Venezuela. PDVSA is the parent company of PDV Holding, Inc. ("PDVH").

28.     PDVH is the parent company of CITGO Holding, Inc ("CITGO Holding"). The value of PDVH is essentially derived from the value of CITGO Holding.

29.     CITGO Holding is the parent company of CITGO Petroleum. The value of CITGO Holding is essentially derived from the value of CITGO Petroleum.

30.     CITGO Petroleum operates three large refineries, a network of pipelines and terminals, as well as lubricant blending plants. CITGO recently reported a record net profit of $2.8 billion for 2022.

31.     CITGO Petroleum, CITGO Holding, and PDVH are incorporated in the United States.

32.     In 2017, the Venezuelan Government, headed by Nicolas Maduro, controlled PDVSA and ran its day-to-day operations. In its SEC filings and debt offerings at the time, PDVSA admitted that "[t]he National Executive … regulates and supervises our operations." The government appointed individuals to serve in the senior positions of PDVSA, while those individuals often also had overlapping roles within the Venezuelan Government.

33.     Venezuela and PDVSA exercised extensive day-to-day control over PDVH at the time, such that PDVH functioned as a mere "pass through" entity that Venezuela and PDVSA used to control CITGO Holding and CITGO Petroleum. In a December 23, 2016 press release, for instance, PDVSA stated that CITGO Petroleum was under PDVSA's "full ownership and control," notwithstanding the fact that CITGO Petroleum is a subsidiary of CITGO Holding, and in turn PDVH.[1]

---

[1]     *See* Press Release, PDVSA, "PDVSA Maintains Full Ownership of CITGO," Dec. 23, 2016.

**B.**     **Political Tensions Between the United States and Venezuela Escalate in 2017.**

34.     On August 29, 2017, President Trump signed Executive Order No. 13808, prohibiting Venezuelan-owned companies, including CITGO Petroleum, CITGO Holding, and PDVH, from making dividend distributions to the Venezuelan Government. The executive order defined "Government of Venezuela" to include "PDVSA, and any person owned or controlled by, or acting for or on behalf of, the Government of Venezuela."[2]

35.     In response to U.S. sanctions, President Maduro took steps to tighten Venezuelan control over PDVSA and its affiliated companies. For example, Maduro appointed Major General Manuel Quevedo of the Venezuelan Army to serve as both Minister of Petroleum and President of PDVSA, an appointment that Reuters reported as "giving the already powerful military control of the OPEC nation's dominant industry."[3]

36.     In September of 2017, Tarek William Saab, Prosecutor General of Venezuela, began arresting PDVSA officers and managers on behalf of Maduro and Venezuela.[4] Saab arrested and imprisoned more than 50 PDVSA officers and managers by the time CITGO ordered Tomeu to travel to Venezuela.

**C.**     **Tomeu's Unlawful Arrest and Imprisonment.**

37.     On November 18, 2017, CITGO notified Tomeu that he was required to attend meetings and presentations in Caracas, Venezuela, the next day. Despite this last-minute request for him to travel over the Thanksgiving holidays, Tomeu complied. CITGO flew Tomeu, along with seven other CITGO executives, on the company's plane to Caracas on November 19.

---

[2]    *See* https://www.treasury.gov/resource-center/sanctions/Programs/Documents/13808.pdf.
[3]    *See*        https://www.reuters.com/article/us-venezuela-oil/new-venezuela-oil-boss-to-give-military-more-pdvsa-posts-idUSKBN1DR1T2.
[4]    *See* https://www.poandpo.com/crime/venezuela-highlevel-arrests-at-pdvsa-for-alleged-graft-2232018513.

38.     On November 21, 2017, the day that the men were scheduled to return to Houston, six of the CITGO executives—five dual citizens of the United States and Venezuela (including Tomeu) and one permanent resident alien—were seized by masked security agents and thrown into a military prison. These six CITGO executives later became known as the "CITGO-6."

39.     Tomeu's arrest and subsequent detention and ultimate conviction were a complete sham. He had not committed any crimes. Nor did he have any involvement whatsoever with the bogus reason subsequently provided for his illegal seizure and detention (an alleged refinancing deal that was never consummated). Despite his obvious innocence, Tomeu, nevertheless, spent **1,775 days** in captivity, suffering untold horrors, including torture.

40.     Tomeu's unlawful seizure and detention were not merely happenstance or bad luck. They were instead part of a coordinated scheme to lure Tomeu and certain other CITGO executives of Venezuelan-descent to Venezuela for this very purpose. CITGO conspired with Venezuela to accomplish this scheme—and/or knowingly and substantially assisted with and participated in it—by, among other things:

- Sending Tomeu to Venezuela under false pretenses, including sending him on an alleged business trip for which he did not have any role;
- Sending only executives who were of Venezuelan descent or had dual U.S. citizenship; and
- Failing to defend Tomeu's innocence and advocate for his freedom.

41.     CITGO's advance knowledge of the unlawful arrests is further supported by the fact that its Vice President of Legal Affairs, Edoardo Orsoni, who was on the plane with the CITGO-6 on November 19, abruptly and without notice left Venezuela on November 20, 2017, the day *before* Tomeu and the other CITGO-6 were unlawfully arrested and detained. Similarly, even though the farcical excuse for the arrest involved a refinancing deal, Calixto Ortega, CITGO's

Vice President of Finance, who also traveled with the men and was with them at the moment of the arrest, was likewise not arrested.

42.     CITGO knew when it required Tomeu to travel to Venezuela on short notice that he would be wrongfully arrested and falsely imprisoned. CITGO also knew that Tomeu was innocent of any wrongdoing—criminal or otherwise.

**D.     While Tomeu Was Wrongfully Imprisoned and Tortured, CITGO Repeatedly Ignored the Vadell Family's Pleas for Help.**

43.     Tomeu was originally taken to an infamous military prison run by the Venezuelan military intelligence service, known as the Dirección General de Contrainteligencia Military ("DGCIM") in Boleita, Caracas. The DGCIM is a prison the U.S. and the U.N. have denounced for "gross violations of human rights," and the U.N. has accused it of being responsible for arbitrary detentions and torture.[5]

44.     While wrongfully incarcerated, Tomeu languished in an overcrowded, windowless, basement dungeon cell with eight other men. The conditions were abhorrent. There was no ventilation, he was forced to sleep on a thin mat on the floor, and the bright lights were left on 24-hours a day. The prisoners were under constant camera surveillance, and Tomeu was not allowed outside for months. Nor did he have access to any reading material or media of any type—not even the Bible. Time felt endless with nothing to mark its passage.

45.     Tomeu also wasted away, losing more than seventy pounds. He was fed less than 600 calories a day and only had access to drinking water when his family provided it, along with all other necessary personal hygiene products and medications. The prison refused to provide even the most basic necessities. To make things worse, other prisoners' family members who visited

---

[5]     *See* https://time.com/longform/american-prisoners-in-venezuela-coronavirus/.

brought their loved ones nutritious and healthy foods, but Tomeu could not take advantage of that latitude because he had no immediate family in Venezuela.

46.     There is no need to imagine Tomeu's truly horrific transformation during his wrongful incarceration; it is painfully obvious from before and after photos:

*Before*

 

*After*



47.     Tomeu survived day-by-day in a system designed to break a person's spirit and mind, subjected to torture and other cruel, inhuman, and degrading punishments. He spent months without being allowed to call his family, receiving letters, or even going outside to see the sunlight and get fresh air. He was also forced to wear a green military outfit (as pictured above) continuously and to have his head shaven to zero level every Thursday.

48.     As Tomeu endured this suffering for absolutely no reason, CITGO also made the unconscionable decision to abandon Tomeu and his family in their greatest hour of need. For example, CITGO did not respond to a December 4, 2017 demand by the Vadell Family that CITGO comply with the Indemnification Agreement and pay legal fees for Tomeu's defense in the Venezuelan proceeding. While CITGO acknowledged receipt of the request, CITGO did not respond substantively to the Vadell Family's indemnification demand for over *fifteen months*, despite repeated requests by the Vadell Family for CITGO to do so.

49.     Moreover, CITGO also failed to denounce and challenge in any way the arbitrary detention of its innocent and loyal employee or the other CITGO-6. By remaining silent in the immediate aftermath of the wrongful detention, CITGO let the world believe that Tomeu was guilty, despite knowing that he was innocent.

50.     Even when the Vadell Family requested other help from CITGO in January 2018 to aid in Tomeu's defense, such as providing documents, CITGO did not bother to respond.

51.     On April 25, 2018, the Vadell Family reached out again to CITGO about its failure to comply with the Indemnification Agreement. Again, CITGO failed to respond at all to this inquiry.

52.     In May 2018, CITGO added insult to injury when it stopped paying Tomeu's salary. This not only negatively impacted Tomeu's ability to fund his defense—a financial obligation CITGO contractually agreed, but later refused, to incur—but it also significantly impacted Tomeu's wife, Dennysse, who lost the household's only source of income.

53.     Yet another example of CITGO's conscious indifference to the unimaginable suffering of the Vadell Family is its response to an August 21, 2018 letter from the families of all the wrongfully detained executives begging CITGO to help them. Contrary to its alleged values of

safety, health, integrity, respect, fairness, and social responsibility, CITGO claimed that it was "not

in a position" to help its executives wrongfully imprisoned during a business trip. Then, CITGO

had the audacity to chastise the families for sending their letter to multiple recipients at CITGO,

stating as follows: "We have previously requested that you and other family members of the

executives who are detained in Venezuela direct all communications to [CITGO's HR General

Manager]. I renew that request again, and ask that you share it with the other family members who

you copied on your email."

     54.    Apparently, the only support CITGO was willing to provide was to inform the

Vadell Family about a CITGO weight loss program:



     55.    CITGO's gesture was particularly cruel considering Tomeu was dying of starvation

at the time.

     56.    On February 26, 2019, the families of the CITGO-6 requested a meeting with the

new Chairman of CITGO's Board of Directors, Luisa Palacios. At this time, CITGO was

controlled by the Board of Directors appointed by the opposition leader, Juan Guaido. Nevertheless, this request was also ignored.

57.    In July 2019, desperate for help, Tomeu and the other members of the CITGO-6 took the extreme risk of sending a handwritten letter to CITGO. In this letter, the men pleaded with CITGO to help them and their families by, among other things:

- Publicly supporting their innocence;
- Responding to the requests from their family members seeking help;
- Reinstating their full benefits, including salary; and
- Generally offering support during this unimaginably difficult time.

58.    The letter made clear that the men sought help not only for themselves, but also their family members, who had long been dealing with this devastating situation without any help from CITGO:



59.    Once again, CITGO callously ignored this call for help.

60.    CITGO also never publicly and unconditionally supported Tomeu's innocence. Nor did it ever make any effort to advocate for his return home. In fact, when the arrests were made, CITGO instructed its employees *not* to talk about the men. The Vadell Family, on the other hand, worked tirelessly for years to exhaust every avenue to try to free Tomeu from his unjust imprisonment. And while others in the community and in Washington D.C. rallied around the Vadell Family, CITGO did absolutely nothing to advocate for Tomeu's freedom.

61.     Even when CITGO did eventually provide some financial and other assistance to the Vadell Family beginning in mid-to-late 2019—nearly two years into the wrongful imprisonment of its innocent employee—its actions were legally and woefully inadequate.

62.     CITGO continued to ignore repeated requests by the Vadell Family for it to reinstate Tomeu's salary. For example, the Vadell Family requested that CITGO reinstate Tomeu's salary in January 2021 and never received a response, although it was implicitly rejected because CITGO did not reinstate Tomeu's salary as requested.

**E.     Tomeu's Wrongful Imprisonment Continued for Nearly Five Years.**

63.     Venezuelan law requires prisoners to be tried within two years or be released. Instead of releasing Tomeu after two years, however, Venezuela moved him out of prison and placed him under guarded "house" arrest, although he did not have a house in Venezuela. This house arrest lasted less than two months. When Venezuelan opposition leader Juan Guaido met with US President Donald Trump in Washington D.C. in early 2020, Maduro immediately had Tomeu and the other CITGO-6 rounded up and put back in prison, but this time in the notable prison of El Helicoide, controlled by the SEBIN, an intelligence service of Maduro's regime. Tomeu was "forcibly disappeared" from his house arrest despite the fact that the house arrest had not been legally revoked. The Vadell Family were never informed of the revocation of his house arrest. Nor were they ever officially informed of his whereabouts.

64.     The Vadell Family's anguish about Tomeu's forced disappearance was compounded by the COVID-19 pandemic, which was sweeping through Venezuela and the Venezuelan prisons at the time. The Vadell Family was particularly terrified for Tomeu's health and safety because he had pre-existing health conditions that put him at higher risk for serious illness or even death.

65.     Tomeu again languished in a rotten prison cell without windows, no ventilation, and without seeing sunlight for months. He was not allowed any visitors, not even his lawyer. The prison also had no running water. Water was delivered in trucks and rationed between the men for personal hygiene, washing clothes, toilet flushing, and cleaning the cell. In fact, Tomeu's water ration was around 24 liters per day, that allowed him to take showers with only 5 liters of water, a little more than a gallon. The water truck also did not reach the cell, therefore it had to be manually carried by the men in 5-gallon buckets to fill the plastic tank in the cell.

66.     Later, after another brief stint on guarded house arrest, Tomeu was again thrown back in the El Helicoide and held *incommunicado*, this time within hours of the United States having extradited Alex Saab, a close associate of Maduro, in October 2021.

67.     Throughout this ordeal, both the United States and the international community repeatedly and publicly condemned Tomeu's wrongful detention.

68.     For example, on March 22, 2019, the United States Department of State issued a statement on the status of the CITGO-6, expressing concern about violations of the rights to a fair trial and the conditions of detention of the detainees, who had suffered serious health problems.

69.     On July 8, 2019, the United States Department of State issued another statement requesting the release of the CITGO-6, including Tomeu, noting that the men had been unfairly detained, that they were not allowed adequate communication with their lawyers, and that they suffered from severe health problems.

70.     On September 1, 2020, the United States Department of State issued another statement noting that Tomeu and the others had been wrongfully detained for more than 1,000 days.[6]

---

[6]     *See* https://2017-2021.state.gov/citgo-6-surpasses-1000-days-of-wrongful-detention-in-venezuela/index.html.

71.    On November 21, 2020, on the third anniversary of the illegal arrests, the United States Department of State issued a statement requesting the unconditional release of the CITGO-6 and again noted their wrongful detainment.[7]

72.    On December 30, 2020, the United States Department of Treasury's Office of Foreign Assets Control designated both the Venezuelan judge, Lorena Carolina Cornielles Ruiz, and the Venezuelan prosecutor, Ramon Antonio Torres Espinoza, pursuant to E.O. 13692 as Specially Designated Nationals and Blocked Persons based expressly on their role in "unjust detention and sentencing" of the CITGO-6, including Tomeu.[8]

73.    On November 21, 2021, on the fourth anniversary of the illegal arrests, the United States Department of State issued a statement requesting the release of the CITGO-6, stating that the men were imprisoned "on specious charges without due process or access to a fair trial.[9]

74.    In September 2021, the Human Rights Council of the United Nations issued its "Detailed findings of the independent international factfinding mission on the Bolivarian Republic of Venezuela," which specifically referenced Tomeu's case in its findings regarding discrepancies in arrest warrants and arrest reports and failures to act upon other illegalities during arrest and detention, including short term enforced disappearances. See A/HRC/48/CRP.5, at ¶¶ 241, 251.

75.    Finally, a separate United Nations body, the United Nations Working Group on Arbitrary Detentions ("WGAD") issued a lengthy decision finding that Venezuela had (1) arbitrarily detained Tomeu; (2) violated Tomeu's human rights, and (3) subjected Tomeu to cruel and inhuman treatment. See, e.g., WGAD Opinion No. 16/2022 Concerning Tomeu Vadell

---

[7]    See https://2017-2021.state.gov/anniversary-of-the-wrongful-detention-of-the-citgo-6-in-venezuela/index.html.
[8]    See https://home.treasury.gov/news/press-releases/sm1225.
[9]    See https://www.state.gov/four-years-of-wrongful-detention-for-the-citgo-6/.

Recalde, at ¶¶ 34, 42, 78, 80, 88.[10] WGAD also found that Tomeu was innocent of the underlying charges. *See, e.g., id.* at ¶ 79.

76.    Despite this public outcry, CITGO remained on the sidelines without publicly (or even privately) advocating for Tomeu's release.

77.    Tomeu remained imprisoned until he was finally released on October 1, 2022, after **1,775 days** of wrongful detainment. His release was in exchange for the United States having simultaneously released two nephews of President Nicolas Maduro's wife, who had been jailed in the United States for years on narcotics convictions.

78.    On October 6, 2022, pursuant to the Robert Levinson Hostage Recovery and Hostage-taking Accountability Act, 22 U.S.C. § 1741 et seq., the United States Department of State issued a letter stating that it had officially determined that Tomeu had been "wrongfully detained" by the Bolivarian Republic of Venezuela from November 21, 2017, until October 1, 2022.

**F.    CITGO's Wrongful Conduct Continued Once Tomeu Was Home.**

79.    Finally, even after Tomeu was finally released—which again CITGO did nothing to secure—CITGO has not welcomed him back with open arms. Instead, CITGO made Tomeu's transition home even more stressful and difficult.

80.    In reporting its fourth quarter and full year 2022 results, including a record profit for the year, CITGO reported that it was particularly proud of its safety record that year.  But CITGO does not even acknowledge or comment on the fact that in 2022 its wrongfully detained employees had finally returned home after five years of wrongful imprisonment.

---

[10]    https://www.ohchr.org/en/special-procedures/wg-arbitrary-detention/opinions-adopted-working-group-arbitrary-detention/opinions-adopted-working-group-arbitrary-detention-its-93rd-session.

81.    In sum, the Vadell Family has endured more than any family should as a result of CITGO's wrongful actions. Incredibly, CITGO has never accepted any responsibility for Tomeu's wrongful detention, nor even issued a simple apology for its role in this terrible injustice. Yet, despite CITGO "adamantly" denying that it did anything wrong, the facts and the law show otherwise. Not only did CITGO's treatment of Tomeu and the Vadell Family violate the most basic tenets of human decency, it also violated multiple legal duties that CITGO owed the Vadell Family, for which they now seek recovery.

## VI.    CAUSES OF ACTION

82.    For each cause of action following, Plaintiffs hereby adopt, restate, and reallege each and every paragraph above as if fully and completely set forth herein. Plaintiffs assert the following causes of action:

## A.    Conspiracy and Aiding & Abetting.

83.    CITGO, PDVSA, and Venezuela sought to accomplish the objective of having Tomeu wrongfully arrested and imprisoned in retaliation for U.S. sanctions on Venezuela and PDVSA, among other reasons. CITGO, PDVSA, and Venezuela reached a meeting of the minds on this objective when CITGO forced Tomeu to travel to PDVSA's offices in Caracas, Venezuela, and then worked with Maduro to coordinate Tomeu's arrest and imprisonment. The arrest and imprisonment were both unlawful and overt acts taken in pursuance of the objective of having Tomeu wrongfully arrested and imprisoned in retaliation for U.S. sanctions on Venezuela and PDVSA, among other reasons.

84.    Additionally, or alternatively, CITGO knowingly and substantially assisted with and participated in Tomeu's unlawful arrest and detention, including, but not limited to, by sending Tomeu to Venezuela on an alleged "business trip" under false pretenses, sending only CITGO

executives of Venezuelan-descent, and then remaining deliberately silent, rather than support, its innocent employee wrongfully detained abroad.

85.    As a result of CITGO's conspiring with, or knowingly and substantially assisting with and participating in Tomeu's unlawful arrest and detention, the Vadell Family has sustained, and continues to sustain, severe injuries and damages.

**B.    False Imprisonment.**

86.    CITGO willfully detained Tomeu when it acted with the intention of interfering with Tomeu's freedom of movement. CITGO acted without the consent of Tomeu and without the authority of law. Tomeu, a United States citizen, was held in Venezuela and his imprisonment violated both United States and Venezuelan due process laws.

87.    As a result of Tomeu's false imprisonment, the Vadell Family sustained, and continue to sustain, severe injuries and damages.

**C.    Intentional Infliction of Emotional Distress.**

88.    CITGO acted intentionally or recklessly by, among other things, engaging in a conspiracy and/or aiding and abetting Tomeu's kidnapping, wrongful detention, and torture and then deliberately ignoring repeated requests from Tomeu and his family for help during this desperate situation.

89.    As a result of CITGO's extreme and outrageous conduct, the Vadell Family has sustained, and continue to sustain, severe injuries and damages.

**D.    Negligence.**

90.    CITGO has a duty to protect its employees sent into high-risk areas abroad for work purposes. CITGO also has a duty to warn its employees when it has advance knowledge of the

imminent wrongful detention. CITGO also has a duty to help employees (and their families) who have been wrongfully detained abroad.

91.    CITGO failed to comply with any of these or similar duties, and, as a result, the Vadell Family suffered and is still suffering tremendously.

**E.    Gross Negligence.**

92.    CITGO committed acts or omissions which when viewed objectively from the standpoint of the actor at the time of their occurrence involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

93.    Specifically, and for example, CITGO knew that there was an extremely high risk in sending Tomeu to Venezuela in November 2017 and simply did not care.

94.    As a result of CITGO's extreme and outrageous conduct, the Vadell Family has sustained, and continue to sustain, severe injuries and damages.

## VII.    DAMAGES

95.    The Vadell Family hereby adopts, restates, and realleges each and every paragraph above as if fully set forth herein.

96.    CITGO's actions, as set forth above, proximately caused injuries to the Vadell Family which resulted in the following damages for which the Vadell Family are entitled to reasonable and proper compensation:

  a)    past and future medical expenses;

  b)    past and future physical pain and mental anguish;

  c)    past and future physical impairment;

  d)    past and future disfigurement;

22

e)      past lost wages and future lost wage-earning capacity;

f)      past and future loss of consortium;

g)      past and future for loss of companionship;

h)      past and future pecuniary loss; and

i)      attorneys' fees.

97.     The Vadell Family does **not**, however, seek in this lawsuit to recover any damages for the loss of retirement benefits that Tomeu would have earned but for his wrongful detention, including any benefits under plans governed by the Employee Retirement Income Security Act, or otherwise. Nothing in this Petition is intended to or should be construed to assert any claims involving any federal questions.

98.     Plaintiffs seek to recover pre-judgment and post-judgment interest at the statutory rate or at such other rate as is set by this Court.

99.     Plaintiffs seek all damages they are entitled to under the law, whether pled or not. This includes exemplary damages.

100.    Exemplary damages caps do not apply because the conduct at issue constitutes a felony. See Tex. Civ. Prac. & Rem. Code Ann. § 41.008(c)(3) (aggravated kidnapping).

## VIII.   <u>JURY DEMAND</u>

101.    Pursuant to the provisions of Texas Rule of Civil Procedure 216, Plaintiffs formally make this demand and application for a jury trial in this lawsuit.

## IX.    <u>PRAYER</u>

Plaintiffs pray Defendants be cited to appear and answer herein, and that upon final trial, Plaintiffs recover from Defendants all of the damages set forth above, exemplary damages, costs of court, pre-judgment and post-judgment interest, expenses, and such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**RUSTY HARDIN & ASSOCIATES LLP**

By: _/s/ Rusty Hardin_
       Rusty Hardin
       State Bar No. 08972800
       Megan C. Moore
       State Bar No. 24054322
       Joe Roden
       State Bar No. 00794549
       Daniel R. Dutko
       State Bar No. 24054206
       Lara Hollingsworth
       State Bar No. 00796790
       Leah M. Graham
       State Bar No. 24073454

5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

rhardin@rustyhardin.com
mmoore@rustyhardin.com
jroden@rustyhardin.com
ddutko@rustyhardin.com
lhollingsworth@rustyhardin.com
lgraham@rustyhardin.com

3/21/2023 11:53 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73853936
By: Wanda Chambers
Filed: 3/21/2023 11:53 AM

CAUSE NO. 2023-17486

| | | |
|---|---|---|
| TOMEU VADELL, | § | IN THE DISTRICT COURT OF |
| DENNYSSE VADELL, and | § | |
| CRISTINA VADELL, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| CITGO PETROLEUM CORPORATION | § | |
| | § | |
| *Defendant*. | § | 334TH JUDICIAL DISTRICT |

### PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

Plaintiffs Tomeu Vadell, Dennysse Vadell, and Cristina Vadell (collectively, the "Vadell Family") file this First Amended Original Petition against Defendant CITGO Petroleum Corporation ("CITGO" or "CITGO Petroleum"), showing the Court as follows:

## I.     INTRODUCTION

*"To forgive and accept injustice is cowardice." ~ Mahatma Ghandi*

1.      Nothing is more devastating to a civilized society than when powerful people see fit to take advantage of hardworking, ordinary people with no regard for basic human rights. Yet this is precisely what CITGO did to Tomeu Vadell and his family. More than five years ago, what started as a normal business trip turned into an international nightmare. Tomeu became a pawn in CITGO's and the Venezuelan Government's dangerous game of deception.

2.      In 2017, tensions between the U.S. and Venezuela were rising, causing the United States to impose significant monetary sanctions against Venezuela. The Venezuela Government, under the control of Nicolas Maduro, sought to retaliate. It used its most valuable asset, the U.S.-based refiner CITGO, to exert geopolitical influence and control—and in an attempt to bypass the

newly-enacted sanctions. CITGO was clearly operating at the whim of the Venezuelan Government. And this time, the whim came with a devastating price to Tomeu and his family.

3.     On November 18, 2017, Tomeu Vadell left home on what he thought was a business trip. He was slightly annoyed by the timing of the trip because he had been planning on and was looking forward to spending the Thanksgiving holidays with his family. It was an American tradition his family had whole-heartedly embraced. However, at the last minute, CITGO made a somewhat unusual request that he attend meetings in Venezuela. Tomeu dutifully rearranged his holiday plans and packed his bags to catch the company flight. Before he left, he kissed his wife goodbye, something he might not have even remembered doing except it was the last time he was able to hold his family before he was brutally and wrongfully imprisoned for five excruciating years. Indeed, the next time he was able to hug his wife and children, the family had grown by one, welcoming Tomeu's first grandchild while he was rotting in a Venezuelan prison, and he had visibly shrunk from the near starvation he suffered while in captivity.

4.     Even before Tomeu arrived in Venezuela, he felt uneasy about the last-minute request to attend meetings in Venezuela. Something was off. CITGO had not provided him with a clear explanation for why they wanted him to go and Tomeu had not traveled to Venezuela for CITGO in many years. Frankly, his job had very little connection, if any, to operations in Venezuela.

5.     Once Tomeu arrived in Venezuela, the executives went straight to PDVSA's office. Tomeu and one other executive were told they could leave and go to the hotel. The next day, Tomeu attended various meetings, but the information being discussed was not relevant to his job and would not help him do his job or further CITGO's affairs. He was never asked to present anything or given any opportunity to participate in the discussions. It was also odd that the Vice

President of Legal Affairs, Edoardo Orsoni—who had flown to Venezuela with the other CITGO executives on November 19—abruptly and without telling anyone, quietly left Venezuela on November 20, 2017. Not only was this the first of the meetings they were all supposed to attend, but it was also the day *before* Tomeu and the other were unlawfully arrested and detained.

6.      On November 21, 2017, Tomeu's life was forever altered. The CITGO executives were scheduled and eager to return home that day so they could spend part of the holidays with their families. But instead, masked and armed security agents stormed the meetings and in a public display arrested—without a warrant—the executives that CITGO had hand selected for the trip. These six CITGO executives later became known as the "CITGO-6." The farcical excuse for the arrest involved a refinancing deal. But once again, this was far afield from Tomeu's job responsibilities. Tellingly though, Calixto Ortega, CITGO's *Vice President of Finance*, who also traveled with the men and was with them at the moment of the arrest, was not arrested.

7.      Tomeu and his family then endured a grueling process of Tomeu being falsely accused of a crime and detained in abhorrent conditions. All of his basic rights were violated. He was tortured physically and mentally. He was denied access to basic needs such as food, clothing, and health care. His freedom of movement and speech were restricted. And he was never afforded due process. He and his family were forced to participate in a sham judicial system that resulted in him summarily being convicted of a crime it was not even possible for him to have committed. The United Nations Working Group on Arbitrary Detentions in fact reported on the Venezuelan Government's deplorable mistreatment of Tomeu, and also on his provable innocence. Despite his obvious innocence, Tomeu nevertheless spent **1,775 days** in captivity, suffering untold horrors, including torture.

8.      Tomeu will admit that the worst part of his wrongful detention was not the fear that at any moment he could be killed or the mental and physical abuse he repeatedly endured. It was the fear that he might not ever see his family again. The idea that they were suffering was almost more than he could bear. He could withstand the injuries imposed on him, but knowing that his family was scared, distraught, and needed him is what made every day of his 1,775 days in captivity a living hell. However, it was also his faith in God and the love of his family that kept him alive and fighting for his freedom.

9.      Adding insult to injury, CITGO then abandoned both Tomeu and his family. CITGO refused to speak publicly regarding the men, making it appear that they were guilty, when CITGO knew that they were not. CITGO also refused to respond to multiple pleas from Tomeu's family to assist Tomeu in his fight for freedom, including their requests that CITGO pay his defense fees as contractually required. CITGO then unilaterally and abruptly stopped paying Tomeu's salary, impacting his wife's ability to support herself and Tomeu during this terrible crisis.

10.     Despite Tomeu's more than twenty years of dedicated service to CITGO, his trip to Venezuela was nothing more than a ruse. It was not a coincidence that the CITGO-6 were chosen to make the trip. Almost all of them are dual citizens of the United States and Venezuela, including Tomeu. Indeed, it was by design. CITGO specifically lured Tomeu and the other CITGO executives of Venezuelan-descent to Venezuela as part of a coordinated scheme to maximize their use as political pawns. Thus, with absolute callous disregard for his rights and safety, CITGO sent Tomeu to Venezuela under false pretenses. His freedom was taken and he and his family were sacrificed in an attempt to curry favor with the Maduro Regime.

4

11.     Tomeu and his family have paid an enormous price for CITGO's willingness to discard its loyal employee so cavalierly.

12.     As a result of CITGO's malfeasance, Tomeu lost five years of his life. Not only was he deprived of his freedom, but he was also physically and psychologically tortured. His most basic human rights were routinely violated. He lived in constant fear for his life, and he missed five years' worth of birthdays, anniversaries, graduations, holidays, and other celebrations with his family. He even missed the birth of his first grandchild. All of this he endured while knowing that he was completely innocent of the bogus criminal charges brought against him.

13.     Tomeu was not the only victim of his wrongful detention and mistreatment. The members of the Vadell Family have suffered greatly as the result of CITGO's actions. Tomeu's illegal detention in Venezuela devastated his wife Dennysse, and her circumstances were made even worse by the lack of support from CITGO. During the five years Tomeu was wrongfully imprisoned, his children were never able to visit him. Dennysse risked her own life and freedom to see him three times but had to stop because it became too dangerous for her to keep returning.

14.     Similarly, Tomeu's children were deprived of five years with their father with whom they are all extremely close. Each has been significantly affected by their father's absence. This tragedy has taken a terrible toll on their health, their relationships, and their jobs. Instead of pursuing their future and enjoying life, Tomeu's children were continuously and tirelessly advocating for their dad's freedom—all while CITGO sat on the sidelines, merely observing the terrible consequences of its decision to sacrifice and abandon its loyal employee.

## II.     CLAIMS FOR RELIEF

15.     The Vadell Family seeks monetary relief over $100,000,000.

### III.    PARTIES

16.    Tomeu Vadell ("Tomeu") is a United States Citizen, and his permanent residence is located in Lake Charles, Louisiana.

17.    Dennysse Vadell ("Dennysse") is a United States Citizen, and her permanent residence is located in Lake Charles, Louisiana.

18.    Cristina Vadell ("Cristina") is a United States Citizen, and her permanent residence is located in Houston, Texas.

19.    Defendant CITGO Petroleum Corporation is a Delaware corporation with its principal place of business at 1293 Eldridge Parkway, Houston, Texas 77077. It may be served by serving its registered agent for service of process—C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136—or wherever it may be found. ***Service is requested at this time by certified mail.***

### IV.    JURISDICTION AND VENUE

20.    The Court has jurisdiction over this controversy because the damages exceed the minimum jurisdictional limits of the Court. Venue is proper in Harris County because Defendant resides in Harris County, Texas.

### V.    STATEMENT OF FACTS

21.    All facts and allegations are based on information and belief.

22.    Tomeu was born in Caracas, Venezuela, to a humble Spanish immigrant family in 1959. He was the first in his family to graduate school. He obtained a Bachelor of Science in Mechanical Engineering from Universidad Metropolitana in Caracas in 1982 and then began working for PDVSA (Petróleos de Venezuela), Venezuela's state-owned oil company. At PDVSA, Tomeu held various positions related to engineering and capital projects in different refineries.

PDVSA also provided Tomeu with a scholarship to the Rensselaer Polytechnic Institute in Troy, New York, to obtain a Master of Science Industrial and Management Engineering in 1993.

23.     Tomeu is proud to be both a Venezuelan and a United States citizen. In 1999, Tomeu was offered a chance to work for the CITGO refinery in Lake Charles, Louisiana. He and his family were excited and nervous about the opportunity. As the family does with everything, they eagerly made America their home, embracing the ideals and values that make this country great. The Vadells saw the move as a chance to bring the best of both countries together.

24.     In his more than twenty years with CITGO, he worked his way up from Project Manager to Vice President of Refining. He was, without question, an exemplary employee for the company throughout his decades of service. He took pride in his loyalty to the company and his fellow employees.

25.     In January 2007, Tomeu completed the naturalization process and became a United States citizen.

26.     Tomeu is and has always been devoted to his family. Tomeu married Dennysse in 1986 and together they raised three children: Veronica, Cristina, and Diego. The Vadell Family is an extremely close-knit and loving family, especially as a family who immigrated to the United States without any friends or family nearby. Tomeu is the rock for his family, someone that each could turn to and depend on in any situation, good or bad. In fact, even while he was wrongfully imprisoned, tortured, and deprived of his basic human rights, Tomeu always put his family first and exhibited profound strength and courage to help his family cope with this five-year nightmare.

A.     **Venezuela's Ownership and Control of CITGO in 2017.**

27.     PDVSA is owned directly by the nation of Venezuela. PDVSA is the parent company of PDV Holding, Inc. ("PDVH").

7

28.     PDVH is the parent company of CITGO Holding, Inc ("CITGO Holding"). The value of PDVH is essentially derived from the value of CITGO Holding.

29.     CITGO Holding is the parent company of CITGO Petroleum. The value of CITGO Holding is essentially derived from the value of CITGO Petroleum.

30.     CITGO Petroleum operates three large refineries, a network of pipelines and terminals, as well as lubricant blending plants. CITGO recently reported a record net profit of $2.8 billion for 2022.

31.     CITGO Petroleum, CITGO Holding, and PDVH are incorporated in the United States.

32.     In 2017, the Venezuelan Government, headed by Nicolas Maduro, controlled PDVSA and ran its day-to-day operations. In its SEC filings and debt offerings at the time, PDVSA admitted that "[t]he National Executive … regulates and supervises our operations." The government appointed individuals to serve in the senior positions of PDVSA, while those individuals often also had overlapping roles within the Venezuelan Government.

33.     Venezuela and PDVSA exercised extensive day-to-day control over PDVH at the time, such that PDVH functioned as a mere "pass through" entity that Venezuela and PDVSA used to control CITGO Holding and CITGO Petroleum. In a December 23, 2016 press release, for instance, PDVSA stated that CITGO Petroleum was under PDVSA's "full ownership and control," notwithstanding the fact that CITGO Petroleum is a subsidiary of CITGO Holding, and in turn PDVH.[1]

---

[1]     *See* Press Release, PDVSA, "PDVSA Maintains Full Ownership of CITGO," Dec. 23, 2016.

**B.**     **Political Tensions Between the United States and Venezuela Escalate in 2017.**

34.     On August 29, 2017, President Trump signed Executive Order No. 13808, prohibiting Venezuelan-owned companies, including CITGO Petroleum, CITGO Holding, and PDVH, from making dividend distributions to the Venezuelan Government. The executive order defined "Government of Venezuela" to include "PDVSA, and any person owned or controlled by, or acting for or on behalf of, the Government of Venezuela."[2]

35.     In response to U.S. sanctions, President Maduro took steps to tighten Venezuelan control over PDVSA and its affiliated companies. For example, Maduro appointed Major General Manuel Quevedo of the Venezuelan Army to serve as both Minister of Petroleum and President of PDVSA, an appointment that Reuters reported as "giving the already powerful military control of the OPEC nation's dominant industry."[3]

36.     In September of 2017, Tarek William Saab, Prosecutor General of Venezuela, began arresting PDVSA officers and managers on behalf of Maduro and Venezuela.[4] Saab arrested and imprisoned more than 50 PDVSA officers and managers by the time CITGO ordered Tomeu to travel to Venezuela.

**C.**     **Tomeu's Unlawful Arrest and Imprisonment.**

37.     On November 18, 2017, CITGO notified Tomeu that he was required to attend meetings and presentations in Caracas, Venezuela, the next day. Despite this last-minute request for him to travel over the Thanksgiving holidays, Tomeu complied. CITGO flew Tomeu, along with seven other CITGO executives, on the company's plane to Caracas on November 19.

---

[2]     *See* https://www.treasury.gov/resource-center/sanctions/Programs/Documents/13808.pdf.
[3]     *See*     https://www.reuters.com/article/us-venezuela-oil/new-venezuela-oil-boss-to-give-military-more-pdvsa-posts-idUSKBN1DR1T2.
[4]     *See* https://www.poandpo.com/crime/venezuela-highlevel-arrests-at-pdvsa-for-alleged-graft-2232018513.

38.    On November 21, 2017, the day that the men were scheduled to return to Houston, six of the CITGO executives—five dual citizens of the United States and Venezuela (including Tomeu) and one permanent resident alien—were seized by masked security agents and thrown into a military prison. These six CITGO executives later became known as the "CITGO-6."

39.    Tomeu's arrest and subsequent detention and ultimate conviction were a complete sham. He had not committed any crimes. Nor did he have any involvement whatsoever with the bogus reason subsequently provided for his illegal seizure and detention (an alleged refinancing deal that was never consummated). Despite his obvious innocence, Tomeu, nevertheless, spent **1,775 days** in captivity, suffering untold horrors, including torture.

40.    Tomeu's unlawful seizure and detention were not merely happenstance or bad luck. They were instead part of a coordinated scheme to lure Tomeu and certain other CITGO executives of Venezuelan-descent to Venezuela for this very purpose. CITGO conspired with Venezuela to accomplish this scheme—and/or knowingly and substantially assisted with and participated in it— by, among other things:

- Sending Tomeu to Venezuela under false pretenses, including sending him on an alleged business trip for which he did not have any role;

- Sending only executives who were of Venezuelan descent or had dual U.S. citizenship; and

- Failing to defend Tomeu's innocence and advocate for his freedom.

41.    CITGO's advance knowledge of the unlawful arrests is further supported by the fact that its Vice President of Legal Affairs, Edoardo Orsoni, who was on the plane with the CITGO-6 on November 19, abruptly and without notice left Venezuela on November 20, 2017, the day *before* Tomeu and the other CITGO-6 were unlawfully arrested and detained. Similarly, even though the farcical excuse for the arrest involved a refinancing deal, Calixto Ortega, CITGO's

Vice President of Finance, who also traveled with the men and was with them at the moment of the arrest, was likewise not arrested.

42.     CITGO knew when it required Tomeu to travel to Venezuela on short notice that he would be wrongfully arrested and falsely imprisoned. CITGO also knew that Tomeu was innocent of any wrongdoing—criminal or otherwise.

**D.    While Tomeu Was Wrongfully Imprisoned and Tortured, CITGO Repeatedly Ignored the Vadell Family's Pleas for Help.**

43.     Tomeu was originally taken to an infamous military prison run by the Venezuelan military intelligence service, known as the Dirección General de Contrainteligencia Military ("DGCIM") in Boleita, Caracas. The DGCIM is a prison the U.S. and the U.N. have denounced for "gross violations of human rights," and the U.N. has accused it of being responsible for arbitrary detentions and torture.[5]

44.     While wrongfully incarcerated, Tomeu languished in an overcrowded, windowless, basement dungeon cell with eight other men. The conditions were abhorrent. There was no ventilation, he was forced to sleep on a thin mat on the floor, and the bright lights were left on 24-hours a day. The prisoners were under constant camera surveillance, and Tomeu was not allowed outside for months. Nor did he have access to any reading material or media of any type—not even the Bible. Time felt endless with nothing to mark its passage.

45.     Tomeu also wasted away, losing more than seventy pounds. He was fed less than 600 calories a day and only had access to drinking water when his family provided it, along with all other necessary personal hygiene products and medications. The prison refused to provide even the most basic necessities. To make things worse, other prisoners' family members who visited

---

[5]    *See* https://time.com/longform/american-prisoners-in-venezuela-coronavirus/.

brought their loved ones nutritious and healthy foods, but Tomeu could not take advantage of that latitude because he had no immediate family in Venezuela.

46.     There is no need to imagine Tomeu's truly horrific transformation during his wrongful incarceration; it is painfully obvious from before and after photos:

*Before*

 

*After*



47.     Tomeu survived day-by-day in a system designed to break a person's spirit and mind, subjected to torture and other cruel, inhuman, and degrading punishments. He spent months without being allowed to call his family, receiving letters, or even going outside to see the sunlight and get fresh air. He was also forced to wear a green military outfit (as pictured above) continuously and to have his head shaven to zero level every Thursday.

48.     As Tomeu endured this suffering for absolutely no reason, CITGO also made the unconscionable decision to abandon Tomeu and his family in their greatest hour of need. For example, CITGO did not respond to a December 4, 2017 demand by the Vadell Family that CITGO comply with the Indemnification Agreement and pay legal fees for Tomeu's defense in the Venezuelan proceeding. While CITGO acknowledged receipt of the request, CITGO did not respond substantively to the Vadell Family's indemnification demand for over *fifteen months*, despite repeated requests by the Vadell Family for CITGO to do so.

49.     Moreover, CITGO also failed to denounce and challenge in any way the arbitrary detention of its innocent and loyal employee or the other CITGO-6. By remaining silent in the immediate aftermath of the wrongful detention, CITGO let the world believe that Tomeu was guilty, despite knowing that he was innocent.

50.     Even when the Vadell Family requested other help from CITGO in January 2018 to aid in Tomeu's defense, such as providing documents, CITGO did not bother to respond.

51.     On April 25, 2018, the Vadell Family reached out again to CITGO about its failure to comply with the Indemnification Agreement. Again, CITGO failed to respond at all to this inquiry.

52.     In May 2018, CITGO added insult to injury when it stopped paying Tomeu's salary. This not only negatively impacted Tomeu's ability to fund his defense—a financial obligation CITGO contractually agreed, but later refused, to incur—but it also significantly impacted Tomeu's wife, Dennysse, who lost the household's only source of income.

53.     Yet another example of CITGO's conscious indifference to the unimaginable suffering of the Vadell Family is its response to an August 21, 2018 letter from the families of all the wrongfully detained executives begging CITGO to help them. Contrary to its alleged values of

13

safety, health, integrity, respect, fairness, and social responsibility, CITGO claimed that it was "not

in a position" to help its executives wrongfully imprisoned during a business trip. Then, CITGO

had the audacity to chastise the families for sending their letter to multiple recipients at CITGO,

stating as follows: "We have previously requested that you and other family members of the

executives who are detained in Venezuela direct all communications to [CITGO's HR General

Manager]. I renew that request again, and ask that you share it with the other family members who

you copied on your email."

54.    Apparently, the only support CITGO was willing to provide was to inform the

Vadell Family about a CITGO weight loss program:



55.    CITGO's gesture was particularly cruel considering Tomeu was dying of starvation

at the time.

56.    On February 26, 2019, the families of the CITGO-6 requested a meeting with the

new Chairman of CITGO's Board of Directors, Luisa Palacios. At this time, CITGO was

controlled by the Board of Directors appointed by the opposition leader, Juan Guaido. Nevertheless, this request was also ignored.

57.    In July 2019, desperate for help, Tomeu and the other members of the CITGO-6 took the extreme risk of sending a handwritten letter to CITGO. In this letter, the men pleaded with CITGO to help them and their families by, among other things:

- Publicly supporting their innocence;

- Responding to the requests from their family members seeking help;

- Reinstating their full benefits, including salary; and

- Generally offering support during this unimaginably difficult time.

58.    The letter made clear that the men sought help not only for themselves, but also their family members, who had long been dealing with this devastating situation without any help from CITGO:

> RESPECTFULLY, WE KINDLY ASK YOU TO CORRECT THIS UNJUST SITUATION. OUR FAMILIES ARE IN DISTRESS AND IN THE NEED OF FINANCIAL SUPPORT TO CONTINUE COPING WITH THE DEVASTATING IMPACT OF THIS CATASTROPHE, UNTIL THE TIME WE ARE FREED AND GO BACK TO THE U.S., BACK HOME.
>
> PLEASE MEET WITH THEM, SUPPORT THEM, AND CHANGE CITGO POSITION AGAINST OUR FAMILIES AND OURSELVES, AS CITGO EMPLOYEES.
>
> PLEASE DO NOT WAIT ANY LONGER. LATER, IT COULD BE TOO LATE.

59.    Once again, CITGO callously ignored this call for help.

60.    CITGO also never publicly and unconditionally supported Tomeu's innocence. Nor did it ever make any effort to advocate for his return home. In fact, when the arrests were made, CITGO instructed its employees *not* to talk about the men. The Vadell Family, on the other hand, worked tirelessly for years to exhaust every avenue to try to free Tomeu from his unjust imprisonment. And while others in the community and in Washington D.C. rallied around the Vadell Family, CITGO did absolutely nothing to advocate for Tomeu's freedom.

61.    Even when CITGO did eventually provide some financial and other assistance to the Vadell Family beginning in mid-to-late 2019—nearly two years into the wrongful imprisonment of its innocent employee—its actions were legally and woefully inadequate.

62.    CITGO continued to ignore repeated requests by the Vadell Family for it to reinstate Tomeu's salary. For example, the Vadell Family requested that CITGO reinstate Tomeu's salary in January 2021 and never received a response, although it was implicitly rejected because CITGO did not reinstate Tomeu's salary as requested.

**E.    Tomeu's Wrongful Imprisonment Continued for Nearly Five Years.**

63.    Venezuelan law requires prisoners to be tried within two years or be released. Instead of releasing Tomeu after two years, however, Venezuela moved him out of prison and placed him under guarded "house" arrest, although he did not have a house in Venezuela. This house arrest lasted less than two months. When Venezuelan opposition leader Juan Guaido met with US President Donald Trump in Washington D.C. in early 2020, Maduro immediately had Tomeu and the other CITGO-6 rounded up and put back in prison, but this time in the notable prison of El Helicoide, controlled by the SEBIN, an intelligence service of Maduro's regime. Tomeu was "forcibly disappeared" from his house arrest despite the fact that the house arrest had not been legally revoked. The Vadell Family were never informed of the revocation of his house arrest. Nor were they ever officially informed of his whereabouts.

64.    The Vadell Family's anguish about Tomeu's forced disappearance was compounded by the COVID-19 pandemic, which was sweeping through Venezuela and the Venezuelan prisons at the time. The Vadell Family was particularly terrified for Tomeu's health and safety because he had pre-existing health conditions that put him at higher risk for serious illness or even death.

65.     Tomeu again languished in a rotten prison cell without windows, no ventilation, and without seeing sunlight for months. He was not allowed any visitors, not even his lawyer. The prison also had no running water. Water was delivered in trucks and rationed between the men for personal hygiene, washing clothes, toilet flushing, and cleaning the cell. In fact, Tomeu's water ration was around 24 liters per day, that allowed him to take showers with only 5 liters of water, a little more than a gallon. The water truck also did not reach the cell, therefore it had to be manually carried by the men in 5-gallon buckets to fill the plastic tank in the cell.

66.     Later, after another brief stint on guarded house arrest, Tomeu was again thrown back in the El Helicoide and held *incommunicado*, this time within hours of the United States having extradited Alex Saab, a close associate of Maduro, in October 2021.

67.     Throughout this ordeal, both the United States and the international community repeatedly and publicly condemned Tomeu's wrongful detention.

68.     For example, on March 22, 2019, the United States Department of State issued a statement on the status of the CITGO-6, expressing concern about violations of the rights to a fair trial and the conditions of detention of the detainees, who had suffered serious health problems.

69.     On July 8, 2019, the United States Department of State issued another statement requesting the release of the CITGO-6, including Tomeu, noting that the men had been unfairly detained, that they were not allowed adequate communication with their lawyers, and that they suffered from severe health problems.

70.     On September 1, 2020, the United States Department of State issued another statement noting that Tomeu and the others had been wrongfully detained for more than 1,000 days.[6]

---

[6]     *See* https://2017-2021.state.gov/citgo-6-surpasses-1000-days-of-wrongful-detention-in-venezuela/index html.

71.     On November 21, 2020, on the third anniversary of the illegal arrests, the United States Department of State issued a statement requesting the unconditional release of the CITGO-6 and again noted their wrongful detainment.[7]

72.     On December 30, 2020, the United States Department of Treasury's Office of Foreign Assets Control designated both the Venezuelan judge, Lorena Carolina Cornielles Ruiz, and the Venezuelan prosecutor, Ramon Antonio Torres Espinoza, pursuant to E.O. 13692 as Specially Designated Nationals and Blocked Persons based expressly on their role in "unjust detention and sentencing" of the CITGO-6, including Tomeu.[8]

73.     On November 21, 2021, on the fourth anniversary of the illegal arrests, the United States Department of State issued a statement requesting the release of the CITGO-6, stating that the men were imprisoned "on specious charges without due process or access to a fair trial.[9]

74.     In September 2021, the Human Rights Council of the United Nations issued its "Detailed findings of the independent international factfinding mission on the Bolivarian Republic of Venezuela," which specifically referenced Tomeu's case in its findings regarding discrepancies in arrest warrants and arrest reports and failures to act upon other illegalities during arrest and detention, including short term enforced disappearances. See A/HRC/48/CRP.5, at ¶¶ 241, 251.

75.     Finally, a separate United Nations body, the United Nations Working Group on Arbitrary Detentions ("WGAD") issued a lengthy decision finding that Venezuela had (1) arbitrarily detained Tomeu; (2) violated Tomeu's human rights, and (3) subjected Tomeu to cruel and inhuman treatment. *See, e.g.*, WGAD Opinion No. 16/2022 Concerning Tomeu Vadell

---

[7]     *See* https://2017-2021.state.gov/anniversary-of-the-wrongful-detention-of-the-citgo-6-in-venezuela/index.html.
[8]     *See* https://home.treasury.gov/news/press-releases/sm1225.
[9]     *See* https://www.state.gov/four-years-of-wrongful-detention-for-the-citgo-6/.

Recalde, at ¶¶ 34, 42, 78, 80, 88.[10] WGAD also found that Tomeu was innocent of the underlying charges. *See, e.g., id*. at ¶ 79.

76.     Despite this public outcry, CITGO remained on the sidelines without publicly (or even privately) advocating for Tomeu's release.

77.     Tomeu remained imprisoned until he was finally released on October 1, 2022, after **1,775 days** of wrongful detainment. His release was in exchange for the United States having simultaneously released two nephews of President Nicolas Maduro's wife, who had been jailed in the United States for years on narcotics convictions.

78.     On October 6, 2022, pursuant to the Robert Levinson Hostage Recovery and Hostage-taking Accountability Act, 22 U.S.C. § 1741 et seq., the United States Department of State issued a letter stating that it had officially determined that Tomeu had been "wrongfully detained" by the Bolivarian Republic of Venezuela from November 21, 2017, until October 1, 2022.

**F.     CITGO's Wrongful Conduct Continued Once Tomeu Was Home.**

79.     Finally, even after Tomeu was finally released—which again CITGO did nothing to secure—CITGO has not welcomed him back with open arms. Instead, CITGO made Tomeu's transition home even more stressful and difficult.

80.     In reporting its fourth quarter and full year 2022 results, including a record profit for the year, CITGO reported that it was particularly proud of its safety record that year.  But CITGO does not even acknowledge or comment on the fact that in 2022 its wrongfully detained employees had finally returned home after five years of wrongful imprisonment.

---

[10]    https://www.ohchr.org/en/special-procedures/wg-arbitrary-detention/opinions-adopted-working-group-arbitrary-detention/opinions-adopted-working-group-arbitrary-detention-its-93rd-session.

81.     In sum, the Vadell Family has endured more than any family should as a result of CITGO's wrongful actions. Incredibly, CITGO has never accepted any responsibility for Tomeu's wrongful detention, nor even issued a simple apology for its role in this terrible injustice. Yet, despite CITGO "adamantly" denying that it did anything wrong, the facts and the law show otherwise. Not only did CITGO's treatment of Tomeu and the Vadell Family violate the most basic tenets of human decency, it also violated multiple legal duties that CITGO owed the Vadell Family, for which they now seek recovery.

## VI.    CAUSES OF ACTION

82.     For each cause of action following, Plaintiffs hereby adopt, restate, and reallege each and every paragraph above as if fully and completely set forth herein. Plaintiffs assert the following causes of action:

### A.    Conspiracy and Aiding & Abetting.

83.     CITGO, PDVSA, and Venezuela sought to accomplish the objective of having Tomeu wrongfully arrested and imprisoned in retaliation for U.S. sanctions on Venezuela and PDVSA, among other reasons. CITGO, PDVSA, and Venezuela reached a meeting of the minds on this objective when CITGO forced Tomeu to travel to PDVSA's offices in Caracas, Venezuela, and then worked with Maduro to coordinate Tomeu's arrest and imprisonment. The arrest and imprisonment were both unlawful and overt acts taken in pursuance of the objective of having Tomeu wrongfully arrested and imprisoned in retaliation for U.S. sanctions on Venezuela and PDVSA, among other reasons.

84.     Additionally, or alternatively, CITGO knowingly and substantially assisted with and participated in Tomeu's unlawful arrest and detention, including, but not limited to, by sending Tomeu to Venezuela on an alleged "business trip" under false pretenses, sending only CITGO

20

executives of Venezuelan-descent, and then remaining deliberately silent, rather than support, its innocent employee wrongfully detained abroad.

85.     As a result of CITGO's conspiring with, or knowingly and substantially assisting with and participating in Tomeu's unlawful arrest and detention, the Vadell Family has sustained, and continues to sustain, severe injuries and damages.

**B.     <u>False Imprisonment.</u>**

86.     CITGO willfully detained Tomeu when it acted with the intention of interfering with Tomeu's freedom of movement. CITGO acted without the consent of Tomeu and without the authority of law. Tomeu, a United States citizen, was held in Venezuela and his imprisonment violated both United States and Venezuelan due process laws.

87.     As a result of Tomeu's false imprisonment, the Vadell Family sustained, and continue to sustain, severe injuries and damages.

**C.     <u>Intentional Infliction of Emotional Distress.</u>**

88.     CITGO acted intentionally or recklessly by, among other things, engaging in a conspiracy and/or aiding and abetting Tomeu's kidnapping, wrongful detention, and torture and then deliberately ignoring repeated requests from Tomeu and his family for help during this desperate situation.

89.     As a result of CITGO's extreme and outrageous conduct, the Vadell Family has sustained, and continue to sustain, severe injuries and damages.

**D.     <u>Negligence.</u>**

90.     CITGO has a duty to protect its employees sent into high-risk areas abroad for work purposes. CITGO also has a duty to warn its employees when it has advance knowledge of the

imminent wrongful detention. CITGO also has a duty to help employees (and their families) who have been wrongfully detained abroad.

91.     CITGO failed to comply with any of these or similar duties, and, as a result, the Vadell Family suffered and is still suffering tremendously.

**E.     <u>Gross Negligence.</u>**

92.     CITGO committed acts or omissions which when viewed objectively from the standpoint of the actor at the time of their occurrence involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

93.     Specifically, and for example, CITGO knew that there was an extremely high risk in sending Tomeu to Venezuela in November 2017 and simply did not care.

94.     As a result of CITGO's extreme and outrageous conduct, the Vadell Family has sustained, and continue to sustain, severe injuries and damages.

## VII.   <u>DAMAGES</u>

95.     The Vadell Family hereby adopts, restates, and realleges each and every paragraph above as if fully set forth herein.

96.     CITGO's actions, as set forth above, proximately caused injuries to the Vadell Family which resulted in the following damages for which the Vadell Family are entitled to reasonable and proper compensation:

        a)     past and future medical expenses;

        b)     past and future physical pain and mental anguish;

        c)     past and future physical impairment;

        d)     past and future disfigurement;

e)    past lost wages and future lost wage-earning capacity;

f)    past and future loss of consortium;

g)    past and future for loss of companionship;

h)    past and future pecuniary loss; and

i)    attorneys' fees.

97.    The Vadell Family does **not**, however, seek in this lawsuit to recover any damages for the loss of retirement benefits that Tomeu would have earned but for his wrongful detention, including any benefits under plans governed by the Employee Retirement Income Security Act, or otherwise. Nothing in this Petition is intended to or should be construed to assert any claims involving any federal questions.

98.    Plaintiffs seek to recover pre-judgment and post-judgment interest at the statutory rate or at such other rate as is set by this Court.

99.    Plaintiffs seek all damages they are entitled to under the law, whether pled or not. This includes exemplary damages.

100.    Exemplary damages caps do not apply because the conduct at issue constitutes a felony. See Tex. Civ. Prac. & Rem. Code Ann. § 41.008(c)(3) (aggravated kidnapping).

## VIII.   JURY DEMAND

101.    Pursuant to the provisions of Texas Rule of Civil Procedure 216, Plaintiffs formally make this demand and application for a jury trial in this lawsuit.

## IX.    PRAYER

Plaintiffs pray Defendant be cited to appear and answer herein, and that upon final trial, Plaintiffs recover from Defendant all of the damages set forth above, exemplary damages, costs of court, pre-judgment and post-judgment interest, expenses, and such other and further relief to which Plaintiffs may show themselves justly entitled.

23

Respectfully submitted,

**RUSTY HARDIN & ASSOCIATES LLP**

By: */s/ Rusty Hardin*
       Rusty Hardin
       State Bar No. 08972800
       Megan C. Moore
       State Bar No. 24054322
       Joe Roden
       State Bar No. 00794549
       Daniel R. Dutko
       State Bar No. 24054206
       Lara Hollingsworth
       State Bar No. 00796790
       Leah M. Graham
       State Bar No. 24073454

5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800

rhardin@rustyhardin.com
mmoore@rustyhardin.com
jroden@rustyhardin.com
ddutko@rustyhardin.com
lhollingsworth@rustyhardin.com
lgraham@rustyhardin.com

24

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sandra Dominguez on behalf of Rusty Hardin
Bar No. 08972800
sdominguez@rustyhardin.com
Envelope ID: 73853936
Filing Code Description: Amended Filing
Filing Description: Plaintiffs' First Amended Original Petition
Status as of 3/21/2023 4:30 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lara Hollingsworth | | lhollingsworth@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Shannon Campbell | | scampbell@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Sandra Dominguez | | sdominguez@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Daniel R.Dutko | | ddutko@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Joe Roden | | jroden@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Leah MGraham | | lgraham@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Megan Moore | | mmoore@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Rusty Hardin | | rhardin@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Cathy Gibson | | cgibson@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Rusty Hardin | | rhardin@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Leah MGraham | | lgraham@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Megan Moore | | mmoore@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Daniel R.Dutko | | ddutko@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Joe Roden | | jroden@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |
| Lara Hollingsworth | | lhollingsworth@rustyhardin.com | 3/21/2023 11:53:07 AM | SENT |