IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOMEU VADELL, DENNYSSE VADELL, and CRISTINA VADELL | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action. No. 4:23-cv-01082 |
| CITGO PETROLEUM CORPORATION, | § § § | Jury |
| Defendant, | § § | |
| and | § § | |
| CITGO PETROLEUM CORPORATION, | § § § | |
| Counter-Plaintiff, | § § | |
| v. | § § | |
| TOMEU VADELL, | § § | |
| Counter-Defendant. | § § § | |

---

### DEFENDANT CITGO PETROLEUM CORPORATION'S ANSWER AND COUNTERCLAIMS

---

Defendant CITGO Petroleum Corporation ("CITGO" or "Defendant") files this Answer and Counterclaims in response to Plaintiff Tomeu Vadell, Dennysse Vadell, and Cristina Vadell's ("Plaintiffs") First Amended Original Petition (the "Petition"):

### I.   INTRODUCTION

1.    CITGO denies the allegations in Paragraph 1.

2.    CITGO admits that the United States imposed sanctions on Venezuela in 2017 and that, at the time, the Venezuelan government was under the control of Nicolas Maduro.  By way

of further response, to the extent plaintiffs seek to establish that "[t]he Venezuela government . . . sought to retaliate" for U.S. sanctions through official state actions on Venezuelan soil, such an allegation implicates the "act of state" doctrine. CITGO denies the remaining allegations in Paragraph 2.

3.      CITGO admits that Tomeu Vadell was asked to attend a business meeting in Venezuela, leaving on November 18, 2017, that he was detained by Venezuela authorities on that trip, and that he was thereafter imprisoned for approximately five years.  Further responding, CITGO states that the allegation that he was "wrongfully imprisoned" by the Venezuela government is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response to this allegation, CITGO states that, on information and belief, it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 3.

4.      CITGO denies each and every allegation in Paragraph 4 that relates to CITGO. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 4.

5.      CITGO admits that Edoardo Orsoni flew to Venezuela with the other CITGO executives on November 19, 2017, and admits that Orsoni left the meeting on November 20, 2017, the day before the other executives were detained, but denies the allegations that Orsoni did not tell anyone. The allegation in Paragraph 5 that Tomeu Vadell was "unlawfully arrested and detained" is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response to this allegation, CITGO states that it lacks

2

information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela.   CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 5.

6.    CITGO denies the allegation in Paragraph 6 that relates to CITGO's hand selection of attendees. CITGO admits that the Tomeu Vadell and other CITGO executives were arrested in Venezuela and that Tomeu and the other five CITGO executives later became known as the "CITGO-6." The allegation that the "refinancing deal" was a "farcical excuse for the arrest" under Venezuelan law is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 6.

7.    CITGO admits that Tomeu Vadell was detained in Venezuela and that he spent 1,775 days in various forms of detention, including prison and house arrest. CITGO further admits that the United Nations Working Group on Arbitrary Detentions reported on the detention of Tomeu Vadell.  The allegations in Paragraph 7 that Tomeu Vadell was "falsely accused of a crime" under Venezuelan law, that "all of his basic rights were violated" under Venezuelan law, that "he was never afforded due process" under Venezuelan law, that he was subject to a "sham judicial system" in Venezuela, that he was "summarily [] convicted of a crime it was not even possible for him to have committed," and that he was innocent under Venezuelan law are all legal conclusions that do not require a response and also implicate the "acts of state" doctrine.  By way of further

3

response to these allegations, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 7.

8.      CITGO lacks information or knowledge sufficient to admit or deny Paragraph 8.

9.      CITGO denies the allegations in Paragraph 9.

10.     CITGO denies the allegations in Paragraph 10.

11.     CITGO denies the allegations in Paragraph 11.

12.     CITGO denies each and every allegation in Paragraph 12 that relates to CITGO. The allegation that "he was completely innocent of the bogus criminal charges against him" is a legal conclusion that does not require an admission or denial and also implicates the "acts of state" doctrine.  By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela.  CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 12.

13.     CITGO denies each and every allegation in Paragraph 13 that relates to CITGO. The allegations that he was "the victim of a wrongful detention" or "illegal detention in Venezuela" are legal conclusions that do not require an admission or denial and also implicate the "acts of state" doctrine.  By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in

Venezuela and the criminal charges against him in Venezuela. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 13.

14.     CITGO denies each and every allegation in Paragraph 14 that relates to CITGO. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 14.

## II.     CLAIMS FOR RELIEF

15.     This paragraph sets forth Plaintiffs' statement of requested relief to which no response is required.

## III.     PARTIES

16.     CITGO admits the allegations in paragraph 16.

17.     CITGO admits that, on information and belief, Dennysse Vadell is a resident of Lake Charles, Louisiana.

18.     CITGO denies Cristina Vadell's residency is in Houston, Texas. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 18.

19.     CITGO admits the allegations contained in Paragraph 19.  CITGO denies that the attempted service was proper.

## IV.     JURISDICTION AND VENUE

20.     Paragraph 20 is a legal conclusion to which no response is required.

## V.     STATEMENT OF FACTS

21.     CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 21.

22.     CITGO admits that Tomeu Vadell worked for PDVSA. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 22.

23.     CITGO admits that Tomeu Vadell is a United States citizen. CITGO admits that Tomeu Vadell worked at its Lake Charles refinery.  CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 23.

24.     CITGO admits that Tomeu Vadell was assigned to or employed by CITGO for over 20 years and held the positions of Project Manager and Vice President of Refining during his tenure. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 24.

25.     CITGO admits the allegations in Paragraph 25.

26.     CITGO denies each and every allegation in Paragraph 26 that relates to CITGO. The allegation that Tomeu Vadell was "wrongfully imprisoned" is a legal conclusion that does not require an admission or denial and also implicate the "acts of state" doctrine.  By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 26.

27.     CITGO admits that Petróleos de Venezuela, S.A. ("PDVSA") is a Venezuelan corporation that is wholly owned by the Venezuelan government, Bolivarian Republic of Venezuela (the Republic). CITGO further admits that PDV Holding, Inc. ("PDV Holding") is a wholly owned subsidiary of PDVSA.

28.     CITGO admits that CITGO Holding, Inc. ("CITGO Holding") is a wholly owned subsidiary of PDV Holding, Inc. CITGO denies the remaining allegations in Paragraph 28.

29.     CITGO admits that it is a wholly owned subsidiary of CITGO Holding. CITGO denies the remaining allegations contained in Paragraph 29.

30.     CITGO admits that it owns and operates three crude refineries, six pipelines and three lubricants blending and packaging plants. CITGO admits that it reported a record net profit in 2022.

31.     CITGO admits that CITGO, CITGO Holding, and PDV Holding are incorporated in the United States.

32.     CITGO admits that Nicolás Maduro was the recognized President of the Republic in 2017.  CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 32.

33.     CITGO lacks information or knowledge about the "press release" plaintiffs purportedly quote. CITGO denies the remaining allegations in Paragraph 33.

34.     CITGO admits that President Trump signed Executive Order No. 13808 and that plaintiffs quote from such order. Plaintiffs' interpretation of the order is a legal conclusion to which no response is required. To the extent a response is required, CITGO denies the allegations in Paragraph 34.

35.     CITGO admits that there were reports that Nicolás Maduro appointed Major General Manuel Quevedo to lead PDVSA and the Oil Ministry in November 2017, and that plaintiffs quote from such a report. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 35.

36.     CITGO denies each and every allegation in Paragraph 36 that relates to CITGO. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 36.

37.     CITGO admits that PDVSA called a meeting in Caracas with all its national and international subsidiaries, and that CITGO informed the executives who would be representing CITGO (the "CITGO Executives"). CITGO admits that the CITGO Executives traveled to Caracas on the company plane on November 19, 2017. Any allegations contained in Paragraph 37 not expressly admitted here are denied.

38.     CITGO admits that Tomeu Vadell and certain other executives were arrested in Venezuela and that he and others later became known as the CITGO-6. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 38.

39.     CITGO admits the allegation in Paragraph 39 that Tomeu Vadell spent 1,775 days in various forms of detention, including prison and house arrest.  With respect to the allegations that "Tomeu's arrest and subsequent detention and ultimate conviction were a complete sham," that "[h]e had not committed any crimes" under Venezuelan law, that his "illegal seizure and detention" in Venezuela were for a "bogus reason," and claims of "obvious innocence" under Venezuelan law, these allegations are legal conclusions that do not require an admission or denial and also implicate the "act of state" doctrine.  By way of further response to these allegations, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela.  CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 39.

40.     The allegation in Paragraph 40 that Tomeu Vadell was subject to an "unlawful seizure and detention" is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had

any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela.  CITGO denies each and every allegation in Paragraph 40 that relates to CITGO, including the bullet points following Paragraph 40. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 40.

41.    To the extent Paragraph 41 alleges that Tomeu Vadell was unlawfully detained in Venezuela, this is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela or the criminal charges against him in Venezuela.  CITGO denies each and every allegation in Paragraph 41 that relates to CITGO. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 41.

42.    CITGO denies each and every allegation in Paragraph 42, including that it was aware that Venezuela would allege "wrongdoing—criminal or otherwise" on the part of Tomeu Vadell when he traveled to Venezuela.  Whether Tomeu Vadell committed a crime under Venezuelan law is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela.

43.    CITGO admits that the article referenced in footnote 5 states, "[Secretary of State] Pompeo has denounced the DGCIM's leadership for 'gross violations of human rights,' and a

recent U.N. report accuses it of being "responsible for arbitrary detentions, ill treatment and torture of political opponents and their relatives."  CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 43.

44.    The allegation in Paragraph 44 that Tomeu Vadell was "wrongfully incarcerated" under Venezuelan law is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela.  CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 44.

45.    CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 45.

46.    CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 46.

47.    CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 47.

48.    CITGO denies each and every allegation in Paragraph 48 that relates to CITGO. With respect to the allegation that there was "no reason" for Tomeu Vadell's detention under Venezuelan law, this is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in

Venezuela and the criminal charges against him in Venezuela. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 48.

49.     With respect to the allegations in Paragraph 49 that Tomeu Vadell's detention was "arbitrary" and "wrongful" under Venezuelan law and that Mr. Vadell was "innocent" under Venezuelan law, these are legal conclusions that do not require a response and also implicate the "act of state" doctrine. By way of further response, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis his detention in Venezuela and the criminal charges against him in Venezuela. CITGO denies each and every remaining allegation in Paragraph 49.

50.     CITGO denies each and every allegation in Paragraph 50.

51.     CITGO denies each and every allegation in Paragraph 51.

52.     CITGO denies each and every allegation in Paragraph 52 that relates to CITGO. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 52.

53.     CITGO admits that Plaintiffs selectively, and with mischaracterizations, quote from correspondence between CITGO and family members of CITGO executives detained in Venezuela. With respect to the allegation that Tomeu Vadell was "wrongful imprisoned" in Venezuela, this is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine. By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in

Venezuela and the criminal charges against him in Venezuela. CITGO denies the remaining allegations in Paragraph 53.

54.     CITGO denies each and every allegation in Paragraph 54.

55.     CITGO denies each and every allegation in Paragraph 55 that relates to CITGO. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 55.

56.     CITGO admits that on February 26, 2019, the families of the CITGO-6 requested a meeting with the Chairman of CITGO's Board of Directors, Luisa Palacios. CITGO admits that at this time, CITGO's Board of Directors was appointed by the opposition leader, Juan Guaido. CITGO denies any remaining allegations in Paragraph 56 that relates to CITGO.

57.     CITGO admits that in July 2019, Tomeu and the other members of the CITGO-6 sent a handwritten letter to CITGO, and that plaintiffs characterize portions of the letter in Paragraph 57. CITGO denies each and every allegation in Paragraph 57 that relates to CITGO, including the bullet points following Paragraph 57. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 57.

58.     CITGO admits that plaintiffs characterize and copy portions of the letter in Paragraph 58. CITGO denies each and every allegation in Paragraph 58 that relates to CITGO. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 58.

59.     CITGO denies each and every allegation in Paragraph 59.

60.     CITGO denies each and every allegation in Paragraph 60 that relates to CITGO. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 60.

61.     CITGO admits that it assisted Plaintiffs with financial and other assistance. With respect to the allegation of Tomeu Vadell's "wrongful imprisonment" in Venezuela, this is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO denies each and every remaining allegation in Paragraph 61.

62.     CITGO denies each and every allegation in Paragraph 62.

63.     The allegations in Paragraph 63 that "Venezuelan law requires prisoners to be tried within two years or be released" and that Tomeu Vadell's "house arrest had not been legally revoked" are legal conclusions that do not require an admission or denial and also implicate the "act of state" doctrine.  CITGO admits that Juan Guaido was a guest of U.S. President Donald Trump at the State of the Union address to Congress on February 4, 2020, and met with President Trump in the Oval Office on February 5, 2020.  CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 63.

64.     CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 64.

65.     CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 65.

66.     CITGO admits that Alex Saab was extradited to the United States in October 2021. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 66.

67.     CITGO admits that the United States government publicly stated that Tomeu Vadell was wrongfully detained on multiple occasions and that the United Nations also issued a report on the detention of Tomeu Vadell. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 67.

68.     CITGO admits the allegations of this paragraph.

69.     CITGO admits only that the United States Department of State issued a statement over the detention of the "CITGO-6" on July 8, 2019. To the extent that Paragraph 69 mischaracterizes the statement, CITGO denies the allegations in Paragraph 69.

70.     CITGO admits that the United States Department of State issued the statement as alleged in Paragraph 70.

71.     CITGO admits only that the United States Department of State issued the statement as alleged in Paragraph 71. To the extent that Paragraph 71 mischaracterizes the statement, CITGO denies the allegations in Paragraph 71.

72.     CITGO admits that the United States Department of Treasury's Office of Foreign Assets Control made the designations as alleged in Paragraph 72.

73.     CITGO admits only that the United States Department of State issued the statement as alleged in Paragraph 73. To the extent that Paragraph 73 mischaracterizes the statement, CITGO denies the allegations in Paragraph 73.

74.     CITGO admits that the Human Rights Council of the United Nations published "Detailed findings of the independent international factfinding mission on the Bolivarian Republic of Venezuela" in September 2021. CITGO lacks information or knowledge sufficient to admit or deny the remaining allegations in Paragraph 74.

75.     CITGO admits only that the United Nations Working Group on Arbitrary Detentions issued Opinion No. 16/2022 as alleged in Paragraph 75.

76.     CITGO denies each and every allegation in Paragraph 76.

77.     CITGO admits that Tomeu Vadell was released from detention on or about October 1, 2022 after 1,775 days in various forms of detention, including house arrest and prison. CITGO further admits that the United States agreed to release Efrain Antonio Campo Flores and Francisco Flores de Freitas, nephews of Nicolas Maduro's wife who had been jailed in the United States on narcotics convictions, in exchange for the release of Tomeu Vadell, the other detained CITGO 6 executives, Matthew Heath, and Osman Khan. With respect to the allegation of "wrongful detainment" by Venezuela under Venezuelan law, this allegation is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response to these allegations, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela.

78.     CITGO lacks information or knowledge sufficient to admit or deny the allegations in Paragraph 78 because Plaintiffs have not provided a copy of this letter to CITGO or attached it to their Petition.

79.     CITGO denies each and every allegation in Paragraph 79.

80.     CITGO incorporates its response to Paragraph 30 of the Petition. CITGO denies each and every remaining allegation in Paragraph 80.

81.     CITGO denies taking any wrongful actions. CITGO denies any responsibility for Mr. Vadell's detention in Venezuela. CITGO denies that there is any interpretation of the "facts"

or "the law" that show any wrongdoing on behalf of CITGO and denies any allegation to the contrary. CITGO denies violating any basic "tenets of human decency." CITGO denies violating any legal duty that CITGO allegedly owed Plaintiffs. CITGO admits that the Plaintiffs are seeking recovery from CITGO but denies that Plaintiffs are entitled to such recovery. With respect to the allegation of a "wrongful detention" in Venezuela, this is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine. By way of further response to this allegation, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO denies any remaining allegation in this Paragraph 81.

## VI.    CAUSES OF ACTION

82.    CITGO re-alleges its responses above to the corresponding paragraphs in the Petition.

### COUNT 1: CONSPIRACY AND AIDING & ABETTING.

83.    CITGO denies each and every allegation in Paragraph 83 that relates to CITGO. The allegations in Paragraph 83 that Tomeu Vadell was "wrongfully arrested and imprisoned in retaliation for U.S. sanctions on Venezuela and PDVSA, among other reasons," that Tomeu Vadell's arrest by Venezuela was "unlawful," and that Tomeu Vadell was "wrongfully arrested" by Venezuela, are legal conclusions that do not require an admission or denial and also implicate the "act of state" doctrine. By way of further response, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal

charges against him in Venezuela.  CITGO denies each and every remaining allegation in Paragraph 83.

84.     CITGO denies each and every allegation in Paragraph 84 that relates to CITGO. The allegations in Paragraph 84 of an "unlawful arrest and detention" by Venezuela and that Tomeu Vadell was "innocent" and wrongfully detained" are legal conclusions that do not require an admission or denial and also implicate the "act of state" doctrine.  By way of further response, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO admits that Tomeu Vadell was an employee at the time of his detention and that his detention was "abroad." CITGO denies each and every remaining allegation in Paragraph 84.

85.     CITGO denies each and every allegation in Paragraph 85 that relates to CITGO. With respect to the allegation in Paragraph 85 of an "unlawful arrest and detention" by Venezuela, this is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela.  CITGO denies each and every remaining allegation in Paragraph 85.

## COUNT 2: FALSE IMPRISONMENT.

86.     CITGO denies each and every allegation in Paragraph 86 that relates to CITGO. The allegation in Paragraph 86 that Tomeu Vadell's "imprisonment in Venezuela violated both United State and Venezuelan due process laws" is a legal conclusion that does not require an

admission or denial and also implicates the "act of state" doctrine.  By way of further response, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO denies each and every remaining allegation in Paragraph 86.

87.   CITGO denies each and every allegation in Paragraph 87 that relates to CITGO. The allegation in Paragraph 87 of a "false imprisonment" is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO denies each and every remaining allegation in Paragraph 87.

## COUNT 3: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

88.   CITGO denies each and every allegation in Paragraph 88 that relates to CITGO. The allegation in Paragraph 88 of a "wrongful detention" is a legal conclusion that does not require an admission or denial and also implicates the "act of state" doctrine.  By way of further response, CITGO states that it lacks information or knowledge of any evidence that Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly formed the basis of his detention in Venezuela and the criminal charges against him in Venezuela. CITGO denies each and every remaining allegation in Paragraph 88.

89.   CITGO denies each and every allegation in Paragraph 89.

## COUNT 4: NEGLIGENCE.

90.     CITGO denies each and every allegation in Paragraph 90 that relates to CITGO.

The allegation in Paragraph 90 of an "imminent wrongful detention" is a legal conclusion that

does not require an admission or denial and also implicates the "act of state" doctrine.  By way

of further response, CITGO states that it lacks information or knowledge of any evidence that

Tomeu Vadell participated in or had any involvement with the refinancing deal that purportedly

formed the basis of his detention in Venezuela and the criminal charges against him in

Venezuela. CITGO denies each and every remaining allegation in Paragraph 90.

91.     CITGO denies each and every allegation in Paragraph 91.

## COUNT 5: GROSS NEGLIGENCE.

92.     CITGO denies each and every allegation in Paragraph 92.

93.     CITGO denies each and every allegation in Paragraph 93 that relates to CITGO.

The allegation that there was an "extremely high risk" that Tomeu Vadell would be wrongfully

arrested and detained is a legal conclusion that does not require an admission or denial and also

implicates the "act of state" doctrine.  By way of further response, CITGO states that it lacks

information or knowledge of any evidence that Tomeu Vadell participated in or had any

involvement with the refinancing deal that purportedly formed the basis of his detention in

Venezuela and the criminal charges against him in Venezuela. CITGO denies each and every

remaining allegation in Paragraph 93.

94.     CITGO denies each and every allegation in Paragraph 94.

## VII.   DAMAGES

95.     CITGO re-alleges its denials and admissions above to the corresponding paragraphs in the Petition.

96.      CITGO denies each and every allegation in Paragraph 96 and denies that Plaintiffs are entitled to any of the relief requested in Paragraph 96 and all of its subparts.

97.      Paragraph 97 is a legal conclusion to which no response is required. To the extent a response is required, CITGO denies the allegations therein.

98.     CITGO denies that Plaintiffs are entitled to the relief requested in Paragraph 98.

99.     CITGO denies that Plaintiffs are entitled to the relief requested in Paragraph 99.

100.    Paragraph 100 is a legal conclusion to which no response is required. To the extent a response is required, CITGO denies the allegations therein.

## VIII.   JURY DEMAND

101.    CITGO admits that Plaintiffs are seeking a trial by jury on all claims properly triable by a jury.

## IX. GENERAL DENIAL

102.    In further answer to the Petition, CITGO states that any factual allegation not specifically admitted herein is denied.

## X. AFFIRMATIVE DEFENSES

103.    CITGO pleads the following additional defenses, some of which may be affirmative defenses on which CITGO will have the burden of proof and others of which relate to the elements of Plaintiffs' causes of action. By pleading these defenses, CITGO does not assume the burden of proof on any defenses for which it would not otherwise have the burden of proof.

104.    Plaintiffs' Petition fails to state a cause of action upon which relief can be granted and their claims should be dismissed under Rule 12(b)(6).

105.     Plaintiffs' claims are barred, in whole or in part, by the act of state doctrine.

106.     Plaintiffs' claims are barred, in whole or in part, by the political question doctrine.

107.     The claims of Plaintiff Dennysse Vadell and Cristina Vadell are barred by the statute of limitations.

108.     Plaintiff Tomeu Vadell's claims are barred by release.

109.     Plaintiffs' claims fail to the extent they are barred by the workers' compensation "exclusive remedy" doctrine.

110.     Plaintiffs' alleged damages were proximately caused by independent actions and the actions of others, and CITGO invokes the provisions of Chapter 33 of the Texas Civil Practices and Remedies Code governing proportionate responsibility.

111.     Plaintiffs' claims for intentional infliction of emotional distress are barred because the relief requested is available under alternative claims.

112.     The facts of this case have not been fully developed. As such, CITGO reserves the right to amend or supplement this Answer as appropriate and in accordance with the Federal Rules of Civil Procedure.

## COUNTERCLAIMS

Defendant/Counter-Plaintiff CITGO Petroleum Corporation ("CITGO"), by its undersigned counsel, for its counterclaims against Plaintiff/Counter-Defendant Tomeu Vadell ("Vadell"), alleges as follows:

## PARTIES

113.     CITGO is a Delaware corporation with its principal place of business at 1293 Eldridge Parkway, Houston, Texas 77077. CITGO established and maintains the CITGO Petroleum Corporation Executive Protection Plan ("EPP" or "Plan"). The EPP is an "employee pension benefit plan" within the meaning of the Employee Retirement Income Security Act of

21

1974, as amended ("ERISA"), 29 U.S.C. § 1002(2), that provides executive retirement benefits to eligible EPP participants.

114.     Vadell is a United States Citizen, and upon information and belief, his permanent residence is located in Lake Charles, Louisiana.

## JURISDICTION AND VENUE

115.     The declaratory relief sought herein is authorized by 28 U.S.C. § 2201.

116.     Vadell disputes whether the EPP requires that he execute an agreement that contains a general release of all claims against CITGO in order to receive executive retirement benefits under the EPP.

117.     Vadell disputes the calculation of his executive retirement benefits under the EPP.

118.     To bring a claim for EPP benefits in court, Vadell must bring suit under 29 U.S.C. § 1132(a)(1)(B).

119.     There is an actual case or controversy between the parties, which requires the interpretation and application of a federal statute, ERISA, 29 U.S.C. §1001 et seq.

120.     This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1332, 2201 and 2202, and 29 U.S.C. § 1132.  This Court has subject matter jurisdiction over CITGO's counterclaims under 28 U.S.C. §§ 1331 because they arise under 29 U.S.C. § 1132; and under 28 U.S.C. § 1367(a) because the counterclaims are so related to Vadell's claims that they form part of the same case or controversy under Article III of the United States Constitution.

121.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the counterclaims occurred in this district, and under 29 U.S.C. § 1132(e)(2), in that the EPP is administered in this district.

122.    Personal jurisdiction over Vadell is proper, as he filed suit in a Harris County District Court located within this judicial district.

**FACTS**

123.    Vadell was employed by CITGO until November 30, 2022.

124.    In November 2012, Vadell was promoted to CITGO's Vice President and General Manager of the Lake Charles Manufacturing Complex.

125.    On or around November 5, 2012, Vadell became a participant in the EPP.

126.    A true and correct copy of the EPP is attached as Exhibit A.

127.    The EPP is an unfunded plan maintained primarily for the purpose of providing deferred compensation to a select group of management employees upon separation from employment with CITGO.  EPP §§ I, II, 7.01, 7.03.

128.    Benefits paid under the EPP are required to be paid out of the general assets of CITGO.

129.    At all relevant times, CITGO has had the right to amend, suspend and/or terminate the Plan.

130.    On October 27, 2020, while Vadell was a participant in the EPP, CITGO amended and restated the EPP to, among other things, add change-in-control protections, improve the benefit formula, and require that, at retirement, each participant timely execute and not revoke, an agreement that includes a general release of all claims against CITGO.

131.    This amendment applied to all Plan participants, including Vadell.

132.    The amount of the executive retirement benefit payable under the EPP is variable until a participant retires and depends upon a participant's "Compensation" at the time the participant retires.

133.    As relevant here, "Compensation" is defined in the EPP as a participant's "current annual base salary" plus the greater of (i) his "most recently awarded annual bonus" or (ii) the "average of [his] last three awarded annual bonuses."

134.    Vadell's awarded annual bonus for 2017 was $610,361.00.

135.    Vadell's awarded annual bonuses for 2018-2022 were each $0.

136.    Vadell retired from CITGO on November 30, 2022.

137.    Vadell was provided a copy of the EPP and informed that he would need to execute an agreement with a general release of all claims against CITGO in order to receive executive retirement benefits under the EPP.

138.    CITGO's Salaried Employees' Pension Plan and CITGO's Retirement Restoration Plan ("RRP"), a supplemental retirement benefit plan for highly compensated employees, do not have a release requirement like the EPP.

139.    Vadell began receiving pension benefits effective December 2022.  Vadell received a benefit under the RRP on or around February 27, 2023.

140.    Vadell refused to execute a general release of all claims against CITGO as required by the EPP.

141.    CITGO did not pay executive retirement benefits to Vadell under the EPP.

142.    On March 10, 2023, CITGO notified Vadell by letter that he did not receive a payment of executive retirement benefits under the EPP due to his failure to execute a general release of all claims against CITGO (the "Notice").  Attached as Exhibit B is a true and correct copy of the Notice.

143.    The Notice also provided Vadell the opportunity to correct this failure by signing an agreement with a general release of all claims against CITGO by March 31, 2023.

24

144.    The Notice also informed Vadell that his estimated benefit under the EPP was a one-time, lump-sum of $1,657,500.

145.    To estimate Vadell's benefit under the EPP, CITGO performed the calculation based on the fact that the greater of Vadell's (i) "most recently awarded annual bonus" or (ii) "average of [his] last three awarded annual bonuses" is $0.

146.    Vadell did not sign and return an agreement containing a general release of claims against CITGO by March 31, 2023.  Instead, through his attorney, Vadell sent CITGO the letter attached as Exhibit C, demanding payment from CITGO of "the corrected and full EPP Benefit without a general release" (the "Demand").

147.    In the Demand, Vadell asserts that (1) "CITGO's request for a general release before payment of the EPP Benefit is invalid," and (2) CITGO's "calculation of the EPP Benefit does not comply with the language of the plan documents."

148.    In particular, in the Demand, Vadell asserts that CITGO cannot require him to sign a general release agreement because, in 2019, he was provided a copy of the then-current EPP that "did not require Mr. Vadell to sign a general release to receive the EPP Benefit."  Vadell also alleges in the Demand that he did not receive notice of the October 27, 2020 EPP amendment and that he was informed through counsel that CITGO could not require that Vadell execute a release of claims to receive his full retirement benefits.

149.    In the Demand, Vadell asserts that "CITGO's EPP Benefit Calculation is Incorrect."  He alleges that his EPP benefit at his 2022 retirement should be greater than CITGO's $2,482,076 estimate of his EPP benefit provided in 2019.  Vadell further alleges that his EPP benefit should be calculated using his 2017 bonus.

## COUNT I (FOR DECLARATORY JUDGMENT: GENERAL RELEASE REQUIREMENT)

150.    CITGO hereby restates and incorporates by reference the allegations set forth in paragraphs 113 through 149 as if fully set forth in this Count I.

151.    To bring a claim for EPP benefits in court, Vadell must bring suit under Section 502(a)(1)(B) of ERISA, 29 USC § 1132(a)(1)(B).

152.    Vadell has asserted that CITGO must pay him executive retirement benefits under the EPP without first executing an agreement that contains a general release of claims against CITGO.

153.    The Demand establishes that there is a dispute between the parties regarding whether CITGO is required to pay executive retirement benefits under the EPP to Vadell without him executing a general release agreement.

154.    ERISA does not prohibit CITGO from requiring a Plan participant to execute a general release of claims in order to receive executive retirement benefits under the EPP.

155.    Because the EPP is a plan "which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees," the EPP is not subject to the same participation and vesting, funding, or fiduciary duty requirements as other ERISA deferred compensation or retirement plans.  *See* 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).

156.    ERISA does not require notice to EPP participants of amendments to the EPP because the Plan is exempt from ERISA's reporting and disclosure requirements.  29 C.F.R. § 2520.104-23.

157.    CITGO validly amended the EPP in October 2020 to, among other things, require execution of an agreement containing a general release of all claims against CITGO in order to receive benefits under the EPP.

158.    CITGO is not barred from enforcing the EPP's general release requirement.

159.    The parties' dispute concerning the enforceability of the general release requirement in the EPP presents an "actual controversy" for purposes of 28 U.S.C. § 2201(a).

160.    This dispute is inextricably intertwined with Vadell's affirmative claims against CITGO as alleged in the Petition because he cannot pursue both his affirmative claims against CITGO and his Demand for the EPP benefit.

161.    The controversy is of sufficient immediacy to justify the issuance of a Declaratory Judgment.

## COUNT II (FOR DECLARATORY JUDGMENT: EPP BENEFIT AMOUNT)

162.    CITGO hereby restates and incorporates by reference the allegations set forth in paragraphs 113 through 161 as if fully set forth in this Count II.

163.    In his Demand, Vadell has asserted that his EPP benefit be calculated using his 2017 bonus amount of $610,361.00.

164.    Vadell's Demand establishes that there is a judiciable dispute between the parties regarding whether his EPP benefit should be calculated using his 2017 bonus.

165.    The parties' dispute concerning the calculation of benefits under the EPP presents an "actual controversy" for purposes of 28 U.S.C. § 2201(a).

166.    This dispute is inextricably intertwined with Vadell's affirmative claims against CITGO as alleged in the Petition, since Vadell is seeking an award of past lost wages.

167.    If the Court awards Vadell past lost wages and such award constitutes "Compensation" under the EPP, the EPP benefit calculation will be affected.

168.    The controversy is of sufficient immediacy to justify the issuance of a Declaratory Judgment.

## IX.    PRAYER

For the foregoing reasons, CITGO requests that the Court enter judgment in favor of CITGO, and against Plaintiff/Counter-Defendant Tomeu Vadell, Plaintiff Dennysse Vadell, and Plaintiff Cristina Vadell, and award CITGO the following relief:

    a.   A declaration that CITGO validly amended the EPP in October 2020 to require a general release agreement as a condition of receipt of executive retirement benefits under the EPP;

    b.   A declaration that CITGO is not obligated to pay Vadell any EPP benefit without a general release agreement executed by Vadell;

    c.   A declaration that Vadell's executive retirement benefit under the EPP is calculated using $0 as the most recently awarded annual bonus and the average of his last three awarded annual bonuses;

    d.   Recovery of actual damages and court costs;

    e.   Recovery of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g);

    f.   Recovery of pre-judgment and post-judgment interest as allowed under the law; and

    g.   All other relief in law and in equity, to which CITGO may be justly entitled.

Respectfully submitted,

**AHMAD, ZAVITSANOS & MENSING PLLC**

/s/ *John Zavitsanos*
John Zavitsanos, Attorney-in-Charge
Texas Bar No. 22251650
Fed ID No. 9122
1221 McKinney St., Suite 2500
Houston, Texas 77010
Tel: (713) 655-1101
Fax: (713) 655-0062
jzavitsanos@azalaw.com

OF COUNSEL:
Rey Flores
Texas Bar No. 24068777
Fed ID No. 3351160
Daryl Moore
Texas Bar No. 14324720
Nathan Campbell
Texas Bar No. 24097455
Fed ID No. 2745040
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney St., Suite 2500
Houston, Texas 77010
rflores@azalaw.com
dmoore@azalaw.com
ncampbell@azalaw.com

Joanne R. Bush
Texas Bar No. 24064983
SDTX Ad. ID # 2175417
jrbush@jonesday.com
Joshua L. Fuchs
Texas Bar No. 24029559
SDTX Ad. ID # 29277
jlfuchs@jonesday.com
Julia N. Camp
Texas State Bar No. 24123598
SDTX Ad. ID # 3688104
juliacamp@jonesday.com
**JONES DAY**
717 Texas, Suite 3300
Houston, Texas 77002
Tel: (832) 239-3782
Fax: (832) 239-3600

Michael J. Gray (*pro hac vice* forthcoming)
**JONES DAY**
110 N. Upper Wacker Dr., Suite 4800
Chicago, IL 60606
Tel: (312) 782-3939
Fax: (312) 782-8585
mjgray@jonesday.com

**COUNSEL FOR
DEFENDANT/COUNTER-PLAINTIFF
CITGO CORPORATION PETROLEUM**

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2023, a true and correct copy of this document has been filed electronically via the Court's CM/ECF filing system and subsequently all counsel in this matter deemed to accept service electronically will be notified via the Court's CM/ECF filing system.

Rusty Hardin
Megan C. Moore
Joe Roden
Daniel R. Dutko
Lara Hollingsworth
Leah Graham
RUSTY HARDIN & ASSOCIATES, LLP
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010

*Counsel for Plaintiff/Counter-Defendant*
*Tomeu Vadell, Plaintiff Dennysse Vadell,*
*and Plaintiff Cristina Vadell*

/s/ *John Zavitsanos*
John Zavitsanos

.

31