United States District Court
Southern District of Texas
**ENTERED**
April 02, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TOMEU VADELL, *et al.*, § | |
| *Plaintiffs*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:23-CV-1082 |
| § | |
| CITGO PETROLEUM CORPORATION, § | |
| *Defendant*. § | |

## ORDER

This Court has written in some detail about the facts that underlie this case and legal doctrines at issue. (Doc. No. 31). The issue still before the Court is whether this case should be remanded to the state district court from whence it came as is desired by the Plaintiffs, or whether the Court should consider one of two other alternatives. The Court could deny the motion to remand and keep the case on its docket, or it could deny the motion to remand and dismiss this case pursuant to either the "act of state" or *Grable* doctrines as is favored by the Defendant. *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

This Court in its prior order found that diversity of citizenship (and therefore a basis for removal jurisdiction) did not exist. It also found that there were no substantial questions of federal law at stake that a court would be compelled to resolve. That being the case, this Court found the *Grable* doctrine does not apply to this case.

Thus, the remaining issue left to decide is whether the "act of state" doctrine compels this Court to exercise jurisdiction over what otherwise would be a Texas state court case. It is important to remember that the act of state doctrine is not actually based upon a law or rule, but instead springs from three overlapping premises. First, there is the premise that a United States court should not sit in judgment on an act performed by a foreign government within its own

borders. *Underhill v. Hernandez*, 168 U.S. 250 (1897). This premise is based primarily "to effectuate general notions of comity among nations." *First Nat. City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 762 (1972). Second, there is the principle that courts should not tread on the foreign policy interest of the United States. This would apply in a case where a court's judgment would imperil amicable relationships, insult the foreign entity, or undermine this country's foreign policy. *Oetjen v. Central Leather Co.*, 246 U.S. 297, 303–304 (1918). Third is the principle that the judiciary should "stay in its own lane." Stated more eloquently, there is a "strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts may hinder the conduct of foreign affairs" and trespass on territory more properly assigned by the Constitution to the Executive Branch. *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990).

With those admonitions in mind, this Court, rather than immediately rule, gave the Executive Branch an opportunity to express its position on this issue. (Doc. No. 31). The Executive Branch has now responded by stating:

> After careful consideration, the United States respectfully **advises that it has decided not to file a statement of interest in connection with the Court's resolution of the pending Motion to Remand, ECF No. 9.**
>
> We appreciate the Court bringing this litigation to the Government's attention and for the opportunity it provided for the United States to express its views on the pending motion.

(Doc. No. 32) (emphasis added).

This Court appreciates the timely and succinct response filed by the Executive Branch. With that response in mind, the Court gave the parties an opportunity to address the issue in light of the Government's decision to forgo taking a position.

This response obviously indicates that the Executive Branch does not deem the issues involved in this case to entail important matters of statecraft. That being said, the response does not resolve the issue at hand. It still remains for the Court to resolve the removal-remand issue currently pending.

In its response, CITGO argues that should the Court remand the case on the basis of the Government's filing, it would be the equivalent of this Court ceding its duty to decide its own jurisdiction to the Executive Branch. (Doc. No. 55). The Plaintiffs, on the other hand, argue that the Government's refusal to express a view is merely a continuation of the critical attitude that the Executive Branch has held of the action taken against the CITGO-6 ever since they were imprisoned. In other words, the Executive Branch has always considered the actions taken by the Venezuelan government as harsh and unjustified and therefore it would have no problem with the pursuit of this case. (Doc. No. 36).

This Court can assure both sides that it will make its own decision as to jurisdiction based upon established judicial principles and precedent—not based upon the current view expressed by whatever administration is in charge in Washington. Nevertheless, this Court tries not to perform acts or ask others to take actions that are frivolous or in vain. Stated differently, it would not solicit a party's (or in this case, a non-party's) position on a question and then completely ignore the response. It finds the Government's position (or non-position, as it more aptly could be described) informative, but CITGO can rest assured it does not find it determinative.[1]

---

[1] The Court finds the Government's expression that it has no interest to express about those acts of the Maduro Administration in this case to be thought-provoking, given that the Maduro Administration has the Venezuelan Army participating in a substantial military buildup on the Guyana border with a possible invasion to be close at hand. *See Venezuela Deploys Military to Oil-Rich Guyana's Border* by Juan Forero, Wall Street Journal, Feb. 9, 2024.

This Court finds that this case should be remanded to the state court from which it was removed. Its reasoning, while taking into account the Government's response and obviously the relative positions and briefs of the parties, is grounded primarily on other factors.

First, the Supreme Court in addressing the act of state doctrine specially described the possibility of exceptions.

> Some Justices have suggested possible exceptions to application of the doctrine, where one or both of the foregoing policies would seemingly not be served: an exception, for example, for acts of state that consist of commercial transactions, since neither modern international comity nor the current position of our Executive Branch accorded sovereign immunity to such acts, *see Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 695–706, 96 S.Ct. 1854, 1861–1867, 48 L.Ed.2d 301 (1976) (opinion of WHITE, J.); or an exception for cases in which the Executive Branch has represented that it has no objection to denying validity to the foreign sovereign act, since then the courts would be impeding no foreign policy goals, *see First National City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 768–770, 92 S.Ct. 1808, 1813–1815, 32 L.Ed.2d 466 (1972) (opinion of REHNQUIST, J.).

*W.S. Kirkpatrick*, 493 U.S. at 404–405.

While not enshrined as firm exceptions to the prevailing rule, the Supreme Court has described the exact category into which this case falls.[2] The Executive Branch (notably, including the President) has not only condemned various practices of the Venezuelan government generally, but has specifically described the seizure and subsequent imprisonment of Tomeu Vadell as being wrongful. *See* Presidential Statement on the Return of United States Citizens Wrongfully Detained in Venezuela (Oct. 1, 2022); Presidential Statement on the Return of American Detainees from Venezuela (Mar. 8, 2022); Press Release, U.S. Dep't of State, Statement on Four Years of Wrongful Detention for the CITGO-6 (Nov. 21, 2021); Press Release, U.S. Dep't of State, The Release of U.S. Nationals from Venezuela (Oct. 1, 2022).

---

[2] In fact, CITGO's response cites a variety of judicial opinions criticizing these exceptions.

It is clear (while not binding in a judicial setting) that these statements indicate as a matter of foreign policy the United States, through its Executive Branch, is highly critical of the Venezuelan government for the action it took against Tomeu Vadell. When one considers the rationales for applying the act of state doctrine, these actions, the possible exception to the act of state doctrine noted by the Supreme Court, and adds to those the Executive Branch's decision to decline to make a statement of interest, one is led to the inescapable conclusion that a jury finding on the merits of this case would not infringe on the interests of the United States and would not undermine any relationship between this country and Venezuela.

More importantly, the Court notes that Venezuela is not a party to this case and no one has suggested that it would be. While its actions will certainly be a topic or theme throughout the anticipated trial, there will not be a judgment sought or rendered against it. CITGO's responsibility, if any, can be independently evaluated without Venezuela's participation in the trial and without it or any of its assets being at risk. Since none of the premises described above are implicated, the Court does not see the need to implement the "act of state" doctrine.

That being the case, this case is hereby remanded to the 334th Judicial District Court of Harris County, Texas. All other pending motions are denied as moot.

SIGNED this 29 day of March, 2024.

Andrew S. Hanen
United States District Judge